ALTAIRE BUILDERS, INC., Plaintiff,

v.

VILLAGE OF HORSEHEADS, Robert G. Chapman, John R. Barber, Alan C. Hutchinson, William J. Cummiskey, Earle R. Catlin, Michael J. Sopp, Walter Good, and James W. Stevens, Defendants.

No. CIV–81–179B(E).

United States District Court, W.D. New York.

Dec. 7, 1982.

Alex T. LaBreque, Peter C. Buckley, Elmira, N.Y., Michael Diamant, Cleveland, Ohio, for plaintiff.

Vincent Fontana, New York City, for defendants.

David Scott, Elmira, N.Y., for Cummiskey.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

The plaintiff, Altaire Builders, Inc. ("Altaire"), commenced this action for compensatory and punitive damages under 42 U.S.C. §§ 1983 and 1985 for alleged violation of its civil rights.

In September, 1978 Altaire contracted to purchase a 13.5 acre tract of land zoned for "planned unit development" ("P.U.D."), and located within the Village of Horseheads (N.Y.). The property adjoined a 1.5 acre tract, previously purchased by Altaire and which was zoned R-1.[1]

In March, 1979 Altaire filed an application with the Village for approval of a P.U.D. project consisting of eighty-two townhouse units to be constructed on the site. As required by Village ordinances (Chapter 11, Article V, Sections 11–30), Altaire's application was reviewed initially by the Village Planning Commission, the Town Planning Board and the Planning Board of the County of Chemung, and received at least conditional approval from each body.

Pursuant to the Village ordinances the matter came on for review by the Village Board of Trustees. Following a public hearing on the project July 12, 1979, at which objection was raised by neighboring homeowners, the Board denied approval.

Plaintiff then commenced an Article 78 proceeding under New York's Civil Practice Law and Rules ("CPLR") in the New York Supreme Court, Chemung County, seeking annulment of the Board's determination. By decision dated November 9, 1979 the action of the Board was annulled by Supreme Court Justice Zeller and the matter was remanded to the Board for a new hearing and the rendition of findings of fact.

A second hearing was held February 14, 1980 and on February 28, 1980 the Board again refused to approve the project. Altaire returned to the State Court and requested reversal of the new decision. Upon consideration of the matter, Justice Zeller ordered the Board to grant Altaire's application subject to any reasonable conditions they deemed · necessary. The conditions thereafter imposed prompted a third Supreme Court proceeding by Altaire. Justice Zeller found two conditions reasonable, but struck a third as arbitrary and capricious.[2]

A building permit was ultimately issued October 21, 1981.[3] Altaire claims that, in the interim between its initial application and the Supreme Court's final decision, a dramatic increase in interest rates rendered completion of the project financially unfeasible.

Altaire contends in this action that its application fully complied with the requirements for a P.U.D. under the Village ordinances, that the Board's actions in denying approval were arbitrary, capricious and unreasonable and denied it the use of its property without due process of law and its right to equal protection of the law under the Fourteenth Amendment to the United States Constitution, that such actions constitute an unconstitutional taking of prop-

1. P.U.D. is one of the permitted principal uses in an R-1 zone.

2. Defendants subsequently sought an amended order clarifying that the condition was annulled for lack of justification, and not because it was arbitrary and capricious. Justice Zeller declined stating that the phrase correctly reflected his intent. Defendants filed a notice of appeal dated September 29, 1981 to New York's Appellate Division, Third Department, from this Order.

3. Defendants contend that the permit had been available since September, 1980. Altaire avers that the defendants had continued to throw up roadblocks in its path, and only had issued the permit as a result of the commencement of this litigation.

erty without just compensation in violation of the Fifth and Fourteenth Amendments, that the actions complained of were taken knowingly, willfully and maliciously and that defendants conspired to deprive Altaire of such rights.

Altaire demands partial summary judgment on the issue of defendants' liability contending that the State Court decisions declared the conduct of the defendants unreasonable, arbitrary and capricious and that such finding is *res judicata* with respect to the claimed constitutional violations. Altaire thus reasons that the only matters remaining for decision are the defendants' entitlement to good faith immunity and the extent of Altaire's damages.

Defendants seek dismissal of the Complaint under Fed.R.Civ.P. rule 12 on the grounds: 1) Altaire has stated no claim against the Village of Horseheads; 2) Altaire has failed to allege the requisite overt acts or class-based action necessary to its section 1985 cause of action; 3) alternatively, even if a claim is stated against the Trustees, they are entitled to absolute immunity for their judicial and/or legislative acts, or qualified immunity; 4) Altaire is collaterally estopped from relitigating the question of defendants' good faith and constitutional issues herein which they submit were raised in the state court and not decided in Altaire's favor; and 5) Altaire's claim is barred by the running of the applicable period of limitations and by Altaire's failure to timely file a notice of claim.

Defendant Stevens, the Village's Zoning Officer, seeks summary judgment on the additional ground that he was not involved in the decisions of the Board of Trustees complained of by Altaire. Defendant Cummiskey contends likewise that he was not a member of the Board of Trustees until the second hearing, and also that his good faith has been established as a matter of law.

*Section 1983 Claim*

Defendants claim that the denial of a building permit[4] does not state a cause of action under section 1983. While defendants attempt to distinguish each of the cases cited by Altaire in support of its cause of action, their arguments are without merit. Reading the Complaint liberally and taking its allegations as true, the Trustees' denial of Altaire's application for P.U.D. approval was arbitrary and capricious and without rational basis or relation to the public health, safety or welfare thereby depriving Altaire of its property without due process or equal protection of the law.[5] *See, Euclid v. Ambler Realty Co.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926).

While defendants are undoubtedly correct in asserting that challenges to local zoning decisions are rarely successful outside of the context of racial discrimination (*See, e.g., Kennedy Park Homes Association Inc. v. City of Lackawanna, New York*, 436 F.2d 108 (2d Cir.1970)), the primary distinction between winning and losing cases is the sufficiency of the evidence and not that the claim is not facially viable under the Civil Rights Act. *See, Cowart v. City of Ocala, Fla.*, 478 F.Supp. 774, 782 (M.D.Fla. 1979). Regardless of the deference normally accorded zoning practices by the courts, the Constitution does not tolerate arbitrary and unreasoned action. *See, e.g., South Gwinnett Venture v. Pruitt*, 491 F.2d 5, 7 (5th Cir.1974).

Even if a claim is stated against the Trustees, the defendant Village contends that no claim has been stated as to it.

The Village argues that Altaire's section 1983 cause of action is premised not on independent wrongdoing by the Village, but on its employment of the Trustees and the Zoning Officer. Because a municipality can not be held vicariously liable under section 1983 for the acts of its agents, defendants submit that the Village is entitled to dis-

---

4. As will become apparent in the course of this memorandum, the action complained of is variously characterized by both parties.

5. Defendants do not challenge the sufficiency of Count II of the Complaint which alleges an unconstitutional taking without just compensation.

missal of that cause of action. *See, Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). *See, also, Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

Under *Monell* a local governmental body is amenable to suit under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers * * * [and] for constitutional deprivations visited pursuant to government 'customs'." *Monell, supra* 436 U.S. at 690–691, 98 S.Ct. at 2035–2036.

■ A municipality cannot be sued under section 1983 for an injury inflicted solely by its agents or employees. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037.

The Complaint avers that the Village through and in conspiracy with the Trustees "implemented and/or executed unconstitutional policies, statements, ordinances, regulations and/or decisions officially adopted and/or promulgated by the Village of Horseheads and/or its Boards and authorities * * *." Complaint, ¶ 20. The allegation concludes that defendants did so "by refusing to approve the planned unit development." *Ibid.* Read in the context of the other allegations and of the prior proceedings in State court, it is clear that the plaintiff's challenge is to the allegedly unconstitutional application of an otherwise valid zoning scheme.

Apparently conceding the need to allege a policy of general application, Altaire adds in its brief that, in denying approval of the project, the Trustees were furthering a Village policy of preventing the development of condominiums or other multi-family

housing and that based on this assertion it has stated a cause of action against the Village. While Altaire may seek to amend its Complaint in order to bring this claim before me in proper fashion,[6] they need not do so in order to survive the instant motion to dismiss.

Policy making does not require the adoption of a rule of general application. *Monell* refers to official acts as well as official policies. As one commentator has noted, "the issue is not the scope of the decision but the scope of the decisionmaker's mandate. If a mayor decides, in a particular case, to direct that a house be broken into unlawfully, that is official policy." Schnapper, *"Civil Rights Litigation After Monell,"* 79 Col.L.Rev. 213, 222 (1979), *see also, Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 448 (2d Cir.1980).

■ The need to establish a course of unconstitutional conduct arises only when the actor is not ordinarily vested with the authority to set governmental policy. Thus, the need arises to establish a course of conduct which puts those in authority on actual or constructive notice of the constitutional violations of subordinates. *See, Owens v. Haas,* 601 F.2d 1242 (2d Cir.1979); *see, also, Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). "Deliberate indifference" to the constitutional violations inflicted by subordinate employees supplies the causal link between the act of an employer and the government itself. That link need not be established here because the decisions of the Board, whether of general or particular application, are intended to be and are binding on the Village. Its members are those officers described by *Monell* whose joint edicts or acts may fairly be said to represent official policy. *See, Owens v. Haas, supra* at 1246. For purposes of section 1983 liability then, the Board of Trustees and the Village are one and the same.

---

**6.** An allegation to this effect would no doubt add to the substance of Altaire's discrimination claim.

## Section 1985 Claim

Section 1985(3) [7] provides a remedy for parties injured when "two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."

Despite the broad scope implied by the phrase "any person" a required element of a section 1985 claim is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirator's action." *See, Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), and *also, Ellentuck v. Klein,* 570 F.2d 414, 426 (2d Cir.1978). The Complaint alleges no racial or class-based motive for the Trustees' refusal to approve the townhouse project. Nor can I infer such a motive from the facts before me. *See, Marty's Audit World of New Britain, Inc. v. Guida,* 453 F.Supp. 810, 814 (D.Conn. 1978). Defendants are therefore entitled to dismissal of the section 1985 cause of action.[8]

## Defendants' Immunity Claims

The Trustees claim to enjoy absolute immunity from liability [9] under section 1983 by virtue of the judicial and/or legislative character of their functions. Altaire contends that they are entitled only to the good faith immunity generally granted to public officials. *See, Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (local school board members), and *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (state governor and other executive officers).

The type of immunity accorded a public official depends not on the defendant's position in government, or the title of his office, but on the nature of the govern-

mental function being performed. *See, Butz v. Economou,* 438 U.S. 478, 511–517, 98 S.Ct. 2894, 2913–2916, 57 L.Ed.2d 895 (1978). The difficulty in determining the nature of the immunity to be accorded in this case arises from the fact that the Trustees, comprising the legislative body of the Village, also perform functions which are normally performed by the executive branch.

Their authority relative to a P.U.D. is set forth in section 11–30 of the Village Ordinances. That section provides in pertinent part that such development "shall be subject to the approval of the Board of Trustees based upon a review and report by the Planning Commission and after a Public Hearing is held by the Board of Trustees in accordance with law."

The ordinances set forth regulations governing, *inter alia,* the minimum area, open space and density requirements of a P.U.D. project, and vests in the Village Planning Commission initial responsibility for determining compliance. The Commission in this case gave its conditional approval to the project. That decision is not binding on the Board of Trustees, which must render its own determination on the merits of a project following a public hearing.

The Trustees submit that their role under section 11–30 is functionally equivalent to the role of judicial officers and entitles them to the same immunity from suits for monetary damages accorded such officers. Defendants note that the Trustees, in reviewing the P.U.D. application, conducted a hearing on notice, accepted Altaire's evidence, considered evidence in opposition offered by Village residents, propounded findings of facts and reached a conclusion based on their findings, which was reviewed under the substantial evidence standard applicable to adjudicative hearings.

---

**7.** While the Complaint does not designate the subsection of section 1985 which is relied upon, in its brief Altaire argues that it has stated a claim under the third subsection.

**8.** I need not reach the other ground for dismissal based on the paucity of factual allegations relative to this claim. *See, Powell v. Work-*

*men's Compensation Board,* 327 F.2d 131, 139 (2d Cir.1964).

**9.** Any immunity afforded the Trustee does not extend to the Village itself. *See, Owen v. City of Independence, supra.*

■ The function of the Trustees in reviewing a P.U.D. application does bear a facial resemblance to the function performed by judicial officers. At least one commentator has urged that zoning decisions be so regarded on the ground that "[t]he unique effect of a rezoning decision on the individual applicants and its basis in demonstrable facts peculiar to the particular application make it a decision which is an exercise in judgment, primarily judicial in character, not legislative." *See,* Booth, *"A Realistic Reexamination of Rezoning Procedure: The Complementary Requirements of Due Process and Judicial Review,"* 10 Ga.L.Rev. 753, 772, n. 1. This position has been rejected by New York's courts, in light of the longstanding characterization of zoning as a legislative function. *See, Webster Associates v. Town of Webster,* 112 Misc.2d 396, 447 N.Y.S.2d 401, 407 (S.Ct., Monroe Co. 1982).

In any event, the analogy itself breaks down under analysis. The nature of the hearing required by the zoning ordinance is not the adjudicative hearing conducted in a judicial or quasi-judicial forum. It is a public hearing, and its function encompasses a variety of objectives. It is designed to inform the Trustees of the merits of the proposal. It is also intended to inform the public and to allow the Trustees to determine the public's response to the proposal and, in particular, the response of landowners as to the effect of the proposal on their interests. While evidence is received, it is clearly not subject to the rules of evidence, and may in fact be rife with hearsay, conjecture and speculation, but is nonetheless acceptable for the purpose of gauging public opinion.

Judges are cloaked with complete immunity for their judicial acts in order to preserve the independent exercise of their discretion. *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Unlike judges, trustees sit not as impartial arbiters between adversaries but as elected officials whose decisions legitimately reflect, within the self-imposed limitations of the zoning ordinances, the interests pressed by their constituents. They may act upon personal knowledge, or they may already have taken a position on the project prior to the hearing. In short, they are participants in the process who are permitted to urge a position on the merits of the proposal during the review. To this extent their role is not judicial in character.

When confronted with the question of the nature of the hearing conducted, Justice Zeller concluded that the hearing was not adjudicative in nature and subject therefore to substantial evidence review, but rather administrative and reviewable under the arbitrary and capricious standard. *See,* November 9, 1979 Order, at 4. Defendants themselves apparently accept Altaire's characterization of the action complained of as the denial of a building permit. New York's courts have consistently held that the denial of a permit is an administrative decision for purposes of Article 78 review. *See, e.g., Rothstein v. County Operating Corp.,* 6 N.Y.2d 728, 185 N.Y.S.2d 813, 158 N.E.2d 507 (1959). In *Kinderhill Farm Breeding Associates v. Appel,* 450 F.Supp. 134, 136 (S.D.N.Y.1978), the court found that, when a Town Board engages in the application of an existing statutory scheme, its actions are not legislative, but administrative or executive entitling Town Board members to only qualified immunity.

■ While the actions of the Trustees are not ministerial, they are no more discretionary than the decision of a zoning body when presented with an application for a special permit. Special permits allow property owners to use their property in a manner expressly permitted by the zoning law, just as the zoning law here expressly permitted P.U.D. projects. The procedures by which special permit requests are considered are the same as those applied here in reviewing a P.U.D. application. Generally, special permit provisions require that there be prior notice and a hearing, a decision accompanied by findings of fact as to the compliance of the applicant with the standards provided in the ordinance for special permits, and support for the findings in the record. *See, generally,* Anderson, *New*

*York Zoning Law and Practice,* Vol. 2, Special Permits, §§ 19.23–19.24, at p. 121–124. Yet the decision is traditionally regarded as administrative for purposes of Article 78 review. *Id.,* Certiorari and Mandamus § 22.15 at 202–203.

In short, I am not persuaded that in performing their role in the P.U.D. review process the Trustees function as judicial officers. Such a characterization is inconsistent with the traditional treatment of zoning as a legislative function when the matter involves the enactment or amendment of the zoning laws *(See, e.g., Village of Belle Terre v. Boraas,* 416 U.S. 1, 4, 9, 94 S.Ct. 1536, 1538, 1541, 39 L.Ed.2d 797 (1974)), or executive or administrative when the matter involves the enforcement of the zoning law. *See, e.g., Kinderhill, supra.*

State legislators are, of course, entitled to absolute immunity for acts performed in that capacity. See *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). Regional legislators have also been freed from the fear of suits for monetary damages arising from their actions in enacting a comprehensive zoning plan. *See, Lake Country Estates v. Tahoe Planning Agcy.,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). In *Tahoe* the Court specifically declined to answer "[w]hether individuals performing legislative functions at the purely local level, as opposed to the regional level, should be afforded absolute immunity from federal damage claims * *." *Id.,* at 404, 99 S.Ct. at 1179. Nonetheless, the logical implication of *Tahoe* is that legislators at all levels of government share the same immunity from suit. *Id.,* at 408, 99 S.Ct. at 1180 (Marshall, J., dissenting). *Also, see, Owen v. City of Independence, supra* 445 U.S. at 663 n. 6, 100 S.Ct. at 1421 n. 6 (Powell, J., dissenting). Several of the Circuit Courts of Appeal have so held. *See, Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir.1981); *Bruce v. Riddle,* 631 F.2d 272, 274 (4th Cir.1980); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611–614 (8th Cir.1980); *see, also, Fralin &*

*Waldron, Inc. v. County of Henrico, Va.,* 474 F.Supp. 1315, 1320 (E.D.Va.1979).

■ The protection from suit extends, however, only to those activities within the "sphere of legitimate legislative activity." *Tenney v. Brandhove, supra,* 341 U.S. at 376, 71 S.Ct. at 788. Because Trustees perform a mixture of functions, the question is whether the duties performed here are appropriately characterized as legislative.

In *Tahoe* the court was presented with the relatively clear question whether the regional planning agency members were entitled to legislative immunity from suits arising from the enactment of a regional zoning plan. Many of the subsequent cases according absolute immunity similarly involved actions readily construed as being within the legislative function. *See, Hernandez, supra* (mayoral veto of zoning changes); *Bruce v. Riddle, supra* (challenge to ordinance as unconstitutionally enacted, and to city council members' private contacts with influential citizens); *Gorman Towers, supra,* (enactment of amendment to zoning law which "downzoned" property from multi-family to single family to prevent construction); *Shellburne, Inc. v. New Castle County,* 293 F.Supp. 237 (D.Del.1968) (downzoning from commercial to residential use).

Several courts have recognized a distinction between the enactment and the enforcement of legislation. In *Tahoe* and here, the same body was entrusted with legislative and executive functions. The Supreme Court recognized, as had the Ninth Circuit below (see, *Jacobson v. Tahoe Regional Planning Agency,* 558 F.2d 928 (9th Cir.1977)), that different immunities attached depending on which type of action had been taken. Given the inadequate development of the record on this point, the Supreme Court simply held that to the extent plaintiff therein sought to impose liability for legislative action, the defendants were immune from suit. See, *Tahoe, supra* 440 U.S. at 406, 99 S.Ct. at 1179.[10]

**10.** The distinction was rejected by the Fifth Circuit Court of Appeals in *South Gwinnett*

*Venture v. Pruitt,* 491 F.2d 5, 7 (1974). In determining the extent to which procedural due

Employing a similar line of analysis, the court in *Gorman Towers, supra,* recognized that as to some reclassifications only a qualified immunity might inure because the reclassification called for an exercise of limited discretion as opposed to "the legislator's duty to 'conceive public policy from the myriad policy options open to the sovereign.' *Adler v. Lynch,* 415 F.Supp. 705, 712 (D.Neb.1976)." *Id.,* at 611, n. 5.

The distinction hypothesized in *Gorman Towers* was applied in *Adler, supra,* a section 1983 action challenging the denial of procedural due process occasioned by the zoning body's failure to provide personal notice prior to its revocation of a variance. In according only a qualified immunity, the court reasoned that, unlike judges or legislators, zoning board officers "must confine their discretion to matters which are more or less specifically defined within the state's public policy * * *." *Ibid.* The duties of that zoning board were deemed more closely analogous to those of the local school board official in *Wood v. Strickland, supra,* wherein the Court held that, for their role in student disciplinary proceedings, the officials enjoy only a qualified immunity. *See, also, Rogin v. BenSalem Tp.,* 616 F.2d 680, 694 (3rd Cir.1980) (noting in ·dicta that the denial of a variance is appropriately cast as administrative as opposed to legislative action, because the act involves application of a general policy to an individual landowner).

In *Fralin & Waldron, Inc., supra,* the court distinguished between the downzoning of plaintiff's land, which is part of the process of enacting legislation, and the denial of a "plan of development" for the construction of a housing project. The court found that, in enforcing as opposed to enacting the zoning change and otherwise hindering construction, the planning commissioners' actions were executive and entitled them to only qualified immunity.

The Trustees' claim to legislative immunity in this case rests on the contention that a prerequisite to approval of the project was the rezoning of the 1.5 acre R–1 tract, and that such action was legislative in character. Close scrutiny of the ordinances and attached zoning scheduled, however, casts doubt on the accuracy of this characterization.

P.U.D. is permitted under the Village zoning law in an R–1 district. The "Zoning Schedule of Use Controls" describes the purpose of an R–1 designation as follows:

"To delineate those areas where predominately residential development has or will be likely to occur * * *."

Among the "Permitted Principal" uses for such property is P.U.D. Thus, it does not appear that an amendment was necessary but instead that review of a P.U.D. application would proceed in the same manner for an area zoned R–1 as for an area already explicitly zoned for such development. Nor does the record of the prior proceedings indicate that the parties differentiated between the area already designated as P–1 and that classified as R–1. The decisions of the Trustees and the state court all turned on the project's compliance with P.U.D. regulations. In addition, the Complaint does not charge defendants with a denial of a rezoning request, but focuses solely on the refusal to grant P.U.D. approval.

Thus, on the record before me I can not conclude that a zoning charge was in fact required in order to grant Altaire P.U.D. approval. To the contrary, inasmuch as P.U.D. was permitted in either zone, approval as to both zones turned solely on Altaire's compliance with P.U.D. criteria.

In short, defendants fail to convince that their role in approving a P.U.D. is either judicial or legislative, or can be distinguished from the role played by other executive and administrative officials. As such

---

process must be accorded an applicant for a zoning change, the court held that zoning was a quasi-legislative function not subject to judicial review in the absence of arbitrary action. The zoning body was not required to make findings of fact or state its reasons on the

record in denying the application. While that may have been true in the case before that court, the town zoning ordinance in the case at bar specifically requires that findings be made as to the compliance of the applicant's P.U.D. plan with Village regulations.

they are entitled to no more than the qualified good faith immunity accorded such officials.

*Collateral Estoppel and Res Judicata*

Defendants claim that Altaire raised the constitutional issues asserted herein in the prior state proceedings and that, because they were not determined in its favor, Altaire is collaterally estopped from relitigating them in this forum.

 Defendants' argument must be rejected. While it is true that Altaire raised the constitutionality of defendants' action in the second Article 78 petition, the state court neither considered nor decided the issues before it in constitutional terms.[11] Justice Zeller found that Altaire was entitled to approval of the project because he found no merit to defendants' reasons for denying approval. Inasmuch as that decision was sufficient to grant Altaire all the relief sought by it in the state proceeding, there was no need to proceed further.[12] A court will, of course, refrain from reaching a constitutional issue if any less intrusive ground for decision exists. *Cf., Ashwander v. Valley Authority,* 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936).

Even if Altaire had failed in its claim under the ordinance, *res judicata* would not preclude it from litigating the constitutional issue in this forum. The supplemental nature of the Civil Rights Act is preserved by allowing a plaintiff to reserve his Civil Rights Act claim for litigation in federal court. Thus, unless the constitutional issue has been fully presented to the state court, *res judicata* will not bar a subsequent action under section 1983 in federal court. *See, e.g., Lombard v. Board of Education,* 502 F.2d 631 (2d Cir.1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975); *Ornstein v. Regan,* 574 F.2d 115, 117 (2d Cir.1978). In the instant case Altaire raised no constitutional issue in its first petition. Upon returning to state court after the second Board hearing, Altaire sought declaratory relief under CPLR § 3001 that the action of the Board was arbitrary, unreasonable, capricious and unconstitutional. The State court prefaced its May 12, 1980 decision with the remark that "[n]o summons or complaint has been served [as] in a declaratory judgment action. The pending application will be treated as an Article 78 proceeding." Quite apparently, the court did not view the constitutional claim as clearly before it. As is not uncommon, Altaire raised the issue in its pleadings but did not aggressively pursue it thereafter, and is not barred from pursuing it here. *See, e.g., Newman v. Board of Education,* 508 F.2d 277 (2d Cir.), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1447, 43 L.Ed.2d 762 (1975).

By the same token Altaire can not claim that the State court explicitly determined the constitutional issue in its favor. The question presented is whether the matters actually litigated and determined in the prior suit establish the elements of Altaire's constitutional claims.

In the first proceeding Altaire challenged the Board's actions as arbitrary and capricious and not based on substantial evidence. Normally, where a substantial evidence question is presented, the case will be transferred from Special Term to the Appellate Division of State Supreme Court pursuant to CPLR § 7804(g). Justice Zeller nonetheless retained jurisdiction and declared that the actions of the Board were administrative and discretionary in nature and subject to the arbitrary and capricious standard of review provided by CPLR § 7803(3). Because the Board's decision had been rendered without reference to any findings of fact, the court remanded for a new hearing and determination and ordered the Trustees to delineate the subordinate findings for their conclusions. Though the failure to make findings where required can render a decision arbitrary and capricious, the deci-

---

11. The same holds true for defendants' good faith argument. The issue was not even raised in the state proceedings, and was completely unnecessary to the resolution of the matters relevant to that proceeding.

12. I do not accord any particular meaning to Altaire's additional request in its prayer for relief that the court grant "such other and further relief as may be proper and just."

sion on the first petition is more accurately described as a refusal to review the merits of the decision until the reasons for the Trustees' action were set forth.

In its second decision the court again identified the issue as whether the Board's decision was arbitrary and capricious. It then proceeded to review each finding and declared that it was either factually incorrect, vague and conclusory, or speculative. Justice Zeller ultimately concluded that the Trustees had again failed to support their decision with sufficient findings of fact. He did not declare however that their decision was arbitrary and capricious, or unreasonable. He simply reasoned that, having given the Trustees two opportunities to render sufficient findings of fact, he would not remand the matter a third time, but would instead order that the permit issue subject to reasonable conditions. Thus the case of *Marvin Friedman, et al. v. City of Willoughby, Ohio,* (N.D.Ohio, Case No. C78–520, October 1, 1980), a slip opinion of which is attached to Altaire's brief, is not, as it contends, directly analogous. In *Friedman* the State court had explicitly found that the subject zoning ordinance was confiscatory, arbitrary and discriminatory in violation of plaintiff's Fifth Amendment and Fourteenth Amendment rights. No such finding was rendered by the State court in this case.

The State court's review in the instant case comes close to a review based on substantial evidence. Under CPLR § 7804(g) a substantial evidence review can be conducted only by the Appellate Division. When such review is conducted by the court sitting at Special Term, the decision rendered will be given no effect upon appeal to the Appellate Division. Defendants have not pressed this ground, largely because of their own collateral estoppel claim, and I need not resolve it here. I raise it only because the confusion thereby engendered bulwarks my conclusion that the State court findings should not be accorded collateral estoppel effect on the constitutional issues raised herein. Altaire's motion for partial summary judgment is therefore denied.

*Statute of Limitations*

■ Defendants next contend that the Complaint must be dismissed as untimely because it was not filed within the limitations period of one year and ninety days provided by New York's General Municipal Law § 50–i(1). In a recent and comprehensive discussion of time limitations applicable to section 1983 actions, the United States Court of Appeals for the Second Circuit explicitly rejected the applicability of section 50–i, and reaffirmed its prior holdings that the three-year period provided by CPLR § 214(2) is most appropriate to section 1983 actions. *Pauk v. Board of Trustees of City University of N.Y.,* 654 F.2d 856, 862 (1981), *Taylor v. Mayone,* 626 F.2d 247 (1980), and *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 439 (1980).

■ Defendants' argument that Altaire's alleged failure to comply with the notice of claim requirement under section 50–e of the General Municipal Law necessitates dismissal is equally without persuasive force. Like section 50–i, the notice of claim provision was intended to restrict remedies for the tortious conduct of municipal employees. Inasmuch as section 1983 was intended to augment a citizen's remedies for constitutional infringements by public officials, courts within this circuit have refused to apply the ninety-day limitation in a civil rights action. *Davis v. Krauss,* 478 F.Supp. 823 (E.D.N.Y.1979); *Glover v. City of New York,* 401 F.Supp. 632, 637 (E.D.N.Y.1975); *Laverne v. Corning,* 316 F.Supp. 629, 636–637 (S.D.N.Y.1970). *Pauk, supra,* underscores that provisions such as section 50–e which burden the exercise of the remedy provided by section 1983 will not be given effect.

*Defendant Stevens*

Altaire predicates its claim against Stevens, the Zoning Officer, on his failure to issue a permit for construction of the P.U.D. project. Under the Village zoning ordinance, section 11.32 "[n]o building permit or certificates of occupancy shall be issued by [the Zoning Officer] except where

all the provisions of this ordinance have been complied with." Compliance with the ordinance was not satisfied so long as the Board refused to approve construction of the project. The State Court decision recognized that the Board's approval was a condition precedent to the Zoning Officer's duty to issue a permit. Justice Zeller's May 29, 1980 decision remanded the matter to the Board of Trustees "for their [sic] directions to the zoning officer to issue the appropriate building permit." Not until September 26, 1980, the date of Justice Zeller's final decision concerning the conditions to be imposed on construction, was the Zoning Officer free to issue the requisite permit. The specific acts complained of in the Complaint all occurred prior to that date, and concern only the resistance of the Trustees to the project.

■ Because section 1983 liability is conditioned on the personal involvement[13] of each defendant in the claimed constitutional violations, and none has been alleged in the Complaint as to Stevens, he is entitled to dismissal. *See, e.g., Taylor v. Mayone, supra,* at 250, n. 2.

*Defendant Cummiskey*

The only claim raised by Cummiskey which was not raised by the other Trustees is that he was not a member of the Board of Trustees at the time of the first decision denying approval of the project. The significance attached to this fact concerns his entitlement to good faith immunity. Inasmuch as the right to claim such immunity does not bar this suit, though it may later bar the assessment of damages, it is an inappropriate issue for summary judgment because it turns in part on the subjective belief of the decisionmaker, a matter particularly appropriate for resolution at trial following direct examination and cross-examination. It is not a question which can be decided simply on the basis of an affidavit by the defendant attesting that he acted with the requisite intent.

Based on the foregoing discussion, Altaire's motion for partial summary judgment is hereby ORDERED denied, and it is further ORDERED that the motion of the defendants for dismissal of the section 1983 claim is denied as to all defendants except Stevens but is ORDERED granted as to him, and the motion to dismiss the section 1985 claim is granted as to all defendants.

---

13. In an affidavit filed subsequent to oral argument Altaire alleges that the Zoning Officer resisted Altaire's requests for a permit between November and December, 1980. These allegations are not properly before me for purposes of this motion to dismiss, and I offer no opinion as to their merits.