&D
ork
District Court

JAN 24 1986

For The Northern Mariana Islands
By
2D...Clerk)

UNITED STATES DISTRICT COURT FOR THE

NORTHERN MARIANA ISLANDS

EDUARDO P. PANGILINAN, et al., ) CIVIL ACTION NO. 79-0006
 )
 Plaintiffs, )
 )
 vs. ) DECISION
 )
FRANCISCO C. CASTRO, et al., )
 )
 Defendants, )
 )
 vs. )
 )
EDWIN MEESE III, )
 )
 Intervenor. )
 )
_____

 The factual background of this case has been extensively discussed in the previous decisions of this Court and in opinions issued by the Ninth Circuit in Smith v. Pangilinan, 651 F.2d 1320 (9th Cir. 1981) and in Pangilinan v. Castro, 688 F.2d 610 (9th Cir. 1982).

 In the instant motion, the plaintiffs seek partial summary judgment as to the liability of the defendants under the claims brought pursuant to 42 U.S.C. § 1983. Distillation of the arguments presented reveals four substantive issues:

 1. Whether the defendants can be held liable for monetary damages under 42 U.S.C. § 1983;

 2. Whether the undisputed facts sufficiently demonstrate an unconstitutional deprivation actionable under 42 U.S.C. § 1983;

AO 72
(Rev.8/82)

3. Whether any or all individual defendants are entitled to assert a defense of qualified immunity;

4. Whether the plaintiffs are entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988.

## I. Standard of Review

Summary judgment is appropriate only if it is demonstrated that there exists no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law. U.S. v. First National Bank of Circle, 652 F.2d 882, 887 (9th Cir. 1981). The Court must construe the pleadings, other record evidence and its attendant inferences most favorably to the party opposing the motion. Harlow v. Fitzgerald, 457 U.S. 800, 816, n.26, 102 S.Ct. 2727, 2737, n.26., 73 L.Ed.2d 396, 409 n.26 (1982). A genuine factual issue may exist only if a viable legal theory would entitle plaintiffs to judgment if they prove their asserted version of the facts. Ron Tonkin Gran Turismo v. Fiat Distributors, 637 F.2d 1376, 1381 (9th Cir. 1981), cert. denied, 454 U.S. 831, 102 S.Ct. 128, 70 L.Ed.2d 109 (1981).

## II. § 1983 Liability

The fundamental cause underlying the claims asserted in this action is the failure of the defendants to issue to the plaintiff class Certificates of Identity which identify the holders as interim United States citizens under the Commonwealth Constitution; interim citizens become United States citizens upon

AO 72
(Rev.8/82)

termination of the Trusteeship Agreement.[1] On September 11, 1980, this Court held that the defendants had a legal duty to issue the Certificates under the principle of administrative res judicata. In the alternative, it was held that the defendants were equitably estopped from denying the Certificates to the plaintiff class. The Ninth Circuit, not reaching the equitable estoppel issue, affirmed on the basis of administrative res judicata and remanded for a determination on the plaintiffs' request for monetary damages under § 1983. Pangilinan v. Castro, supra.

### A. Threshold Issues

Initial issues raised by the defendants involve the applicability of § 1983 to the named defendants. Defendants are sued in their official and in their individual capacities. Accordingly, the Commonwealth is an unnamed defendant, since the named defendants, as officers, were acting within the scope of their official authority. Ante, pp. 13-14; see Civil Actions Against State Government § 2.33. (Shepard's/McGraw-Hill, 1982). The individual defendants also remain subject to personal liability for their unconstitutional acts. Id. at § 2.23. The defenses raised by the Commonwealth are addressed here while the individual qualified immunity defenses are addressed in part III.

_____

[1] Covenant to Establish the Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Art. III, P.L. 94-241, 90 Stat. 263.

The Commonwealth, in its response to the plaintiffs' motion and in its cross motion for summary judgment raises initial issues regarding the suability and the liability of the government under § 1983. In a nutshell, the Commonwealth contends that § 1983 is not applicable in the Commonwealth and that, in any event, the Commonwealth is not a "person" within the meaning of the section. Additionally, the government asserts the defenses of sovereign and statutory immunity.

Subsequent to the filing by the Commonwealth of its response and cross-motion in this matter, this Court held that the Commonwealth is indeed a suable "person" under § 1983 and further ruled that the governmental immunity defenses asserted here are unavailable in an action brought pursuant to § 1983. See Fleming v. Department of Public Safety, Civ.No. 84-0006 (D.N.M.I. decision filed Sept. 11, 1985). Following the precedent in Fleming, the Court denies the Commonwealth's motion for summary judgment.

### B. Constitutional Deprivation

The plaintiffs allege in their complaint, and reassert in this motion, that the defendants' refusal to issue the Certificates denies the plaintiffs due process and the equal protection of the laws entitling them to damages under § 1983. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory... subjects, or causes to be subjected any citizen of the United States or other person within the

AO 72
(Rev.8/82)

435

> jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

It is not disputed here that the defendants' actions were taken under color of law, nor is there any longer a question as to the Commonwealth's status as a suable person under the statute. Therefore, the analysis focuses on the alleged violations themselves.

### 1. Due Process

The Fourteenth Amendment to the United States Constitution, applicable to the Commonwealth through Section 501 of the Covenant, protects persons from the deprivation of property without due process of law. When addressing a due process challenge to government action, the federal courts have developed a two-step test under which to analyze these claims. A court must decide whether the plaintiff possessed a constitutionally protected property interest and if so, whether that interest was deprived without due process of law. Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); Belnap v. Chang, 707 F.2d 1100, 1102 (9th Cir. 1983).

Property interests are protected by the United States Constitution but are created and defined by state law. See Roth v. Board of Regents, 408 U.S. 564, 577, 97 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). There can be no serious question here (and

O 72
(ev.8/82)

the defendants do not attempt to raise one) that the plaintiffs had a protected property interest in the issuance of the Certificates. Under Section 3 of the Certificate of Identity Act[2] the Governor, through the Chief of Immigration, had the mandatory duty to issue certificates to those persons who qualified as Interim Citizens under Section 8 of the Schedule on Transitional Matters. The plaintiffs herein were already determined to so qualify by the Board of Elections. That the Chief of Immigration was bound by the Board's determination was decided by this Court with the approval of the Ninth Circuit. The plaintiffs had a constitutionally recognized property interest in the Certificates. The more troublesome question is whether the initial refusal[3] to issue the Certificates constituted a deprivation without due process of law.

_____

[2] P.L. 1-6, § 3, codified at 3 C.M.C. § 4122, which provides:

> The Governor, through the Chief of Immigration, **shall** issue Certificates of Identity to all persons who, on the date of approval of the Constitution (March 6, 1977) by the people of the Commonwealth, did not owe allegiance to any foreign state and who qualify under one of the criteria set forth in Section 4111. [Emphasis added.]

Section 4111 sets forth the three criteria by which Interim Citizenship is defined in § 8 of the Schedule on Transitional Matters.

[3] Pursuant to order of this Court, the Certificates have now been issued.

The due process clause has essentially two components, one "procedural" and one "substantive." See Fleming v. Department of Public Safety, supra, slip.op. at 26-27; Sirilan v. Castro, DCA No. 83-9009 (D.N.M.I. (App.Div.) 1984) slip.op. at 8-14. Procedural due process requires that the government afford a party notice and a hearing before it deprives that person of a protected right or interest. Although the plaintiffs allege in their complaint that they were not afforded notice and an opportunity to be heard, they do not argue this point in their motion now before the Court.[4] Instead, the plaintiffs set forth an argument based on denial of substantive due process.

The substantive arm of due process doctrine mandates that government action not be arbitrary or capricious. See Las Vegas v. Clark County, 755 F.2d 697, 704 (9th Cir. 1985); Wilkerson v. Johnson, 699 F.2d 325, 328 (6th Cir. 1983); Hewitt

---

[4] The Certificate of Identity Act provides for a hearing before "qualified members of the staff from the Immigration Service." 3 C.M.C. § 4126. The applicant has the right to present testimony or other evidence, to meet any evidence adverse thereto and to cross-examine witnesses. 3 C.M.C. § 4125. The applicant has the right to be represented by an attorney. 3 C.M.C. § 4127. There is evidence that the named plaintiffs were afforded such a hearing to discuss their qualifications with an immigration officer. See Transcripts of Hearings, Defendants' Motion for Summary Judgment (Jan. 16, 1980), Appendices D, S. However, the fact that a hearing was held is not alone dispositive, for a hearing which is merely a sham or pretense will not satisfy the demands of due process. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). No decision is intended on this question as it is not now before the Court.

) 72
ᴣv.8/82)

438

v. City of Truth or Consequences, 758 F.2d 1375, 1378 (10th Cir. 1985); see also, e.g., Altaire Builders v. Village of Horseheads, 551 F.Supp. 1066, 1069 (W.D.N.Y. 1982)("the Constitution does not tolerate arbitrary and unreasoned action"). However, the Constitution is not implicated by all wrongful governmental action; there must be maintained a "meaningful separation between federal and state jurisdiction." Creative Environments, Inc. v. Estabrook, 680 F.2d 822, 831 (1st Cir. 1982). Accordingly, mere violation of state law or other established procedure will not necessarily establish a constitutional violation. See Creative Environments, supra; Roy ¿.—City of Augusta, 712 F.2d 1517 (1st Cir. 1983) (wrongful refusal to issue a license alone not actionable under § 1983).

For an agency's wrongful action to be cognizable under the substantive branch of due process, federal courts have often required that the action be egregious, invidious, represent a gross abuse of power, or be otherwise similarly objectionable. See, e.g., Creative Environments, supra, 680 F.2d at 833 (to implicate the Constitution, action must be "tainted with fundamental procedural irregularity, racial animus, or the like"); Cordeco Development Corp. v. Santiago Vasquez, 539 F.2d 256, 260 (1st Cir. 1976) (action properly brought under § 1983 where government decision made "wantonly and with actual malice" and based on "illegitimate political considerations"); Scott v. Greenville County, 716 F.2d 1409, 1419-1421 (4th Cir. 1983) ("extraordinary and unlawful" intervention in permit process by

439

county council demonstrated "manifest arbitrariness and unfairness" and was violative of substantive due process). However, substantive due process violations are not limited to the patently blatant and obvious.

> The regular and impartial administration of public rules governing these interests, as required by due process, prohibits the subtle distortions of prejudice and bias as well as governmental violations exemplified by bribery and corruption and the punishment of political and economic enemies through the administrative process.

Wilkerson v. Johnson, supra, 699 F.2d at 328.

Turning now to the record evidence in this matter, the Court must determine whether the denial of the Certificates to the plaintiffs, already determined to be wrongful, was accompanied by such arbitrariness, capriciousness or irrationality, or was otherwise so offensive as to violate the substantive norms of due process.

The controlling rationale behind the decisions to deny the named plaintiffs their Certificates, according to Mr. Castro, was the failure to show domicile.[5] The entry into the Commonwealth as non-immigrant workers, Castro reasoned, rendered the plaintiffs legally incapable of forming the necessary domiciliary intent. Of course, this legal conclusion was rejected by this

---

[5] See Letter to DeMesa (Feb. 24, 1978), Complaint, Exh. F and Memo to File Re: Pangelinan [sic] (Oct. 6, 1978), Complaint, Exh. H.

O 72
(ev.8/82)

440

Court in its decision of Sept. 11, 1980. As noted above, standing alone, a misinterpretation of state law does not necessarily substantiate a due process claim. However, the facts before the Court show more than an innocent mistake.

Castro's interpretation of domiciliary intent was explicitly rejected as unconstitutional in 1977, one year earlier, by the Trust Territory High Court in White v. Government of the Northern Mariana Islands, Civ.No. 225-77 (TT High Court (Tr.Div.) 1977). Michael A. White[6], a practicing attorney and United States citizen who had resided on Saipan for more than seven years who considered Saipan his home, sought to be certified to vote in the election of officers of the first Commonwealth government. Section 7(a) of the Election Act[7] provided that a United States citizen could vote if he or she was domiciled in the Northern Mariana Islands and had resided there for at least forty-five days prior to the election. Section (6)(c)(6) of the Act, however, provided:

> Any person, whose presence or residency in the Northern Mariana islands on, and prior to the effective date of the Constitution, is based on a work permit or any other temporary permit is not domiciled in the Northern Mariana Islands.

White was the holder of a nonimmigrant entry permit. The High

---

[6] Also the plaintiffs' attorney of record in the instant matter.

[7] P.L. 5-11 (Sept. 6, 1977)

Court, addressing White's equal protection challenge, found Section (6)(c)(6) unconstitutional.[8] Castro, responding to discovery requests, has admitted that he was aware of the White decision.[9]

More importantly, in denying the Certificates based on the alleged inability of a "nonimmigrant" to form domiciliary intent, Castro acted in complete and total disregard of the advice of two Commonwealth government attorneys. On May 5, 1978, the Assistant Attorney General issued an opinion on the very issue.[10] Referring to the White case, the opinion notes that research on the subject of domicile revealed that "domicile is determined by the *intent* of the individual, and a person may be domiciled in a country even though he is an illegal immigrant

---

[8] Although a major part of the High Court's order relies on the intent of the members of the Commonwealth's Constitutional Convention to allow citizens of the United States to vote in the Commonwealth, the language of the concluding paragraph was not so circumscribed. The Court held that

> the provision of the election law which would prohibit anyone who, at anytime had previously entered the Northern Marianas pursuant to a special permit, could not be domiciled for purposes of the next election, is contrary to the Constitution, and, consequently, cannot stand.

The breadth of this Order reasonably put Castro on notice of the tenable foundation of his legal conclusion.

[9] See Answers to Plaintiffs First Set of Interrogatories, at ¶9 (filed Apr. 21, 1981).

[10] Appendix C to Plaintiffs' Motion for Summary Judgment (filed Feb. 20, 1980).

or only the possessor of a temporary visa." The opinion continued on to discuss foreign workers:

> In the case of Filipino workers who renounced their Philippine citizenship upon the suggestion of the Resident Commissioner an even stronger case can be made because they did so on the representation of the Government that they would become eligible for U.S. citizenship. Furthermore, if the above-cited sections [Covenant, Section 301 and Schedule of Transitional Matters, Section 8] are to be given meaning, these aliens would certainly come within the ambit of them.

The opinions, addressed to the Chief of Economic Development Division, was also "carbon-copied" to Castro.

Even more important is the "formal opinion and directive" of the Acting Attorney General to Castro dated June 29, 1978[11]/regarding the status of third country nationals as interim United States citizens under the Commonwealth Constitution. The opinion emphasizes that the issue of domicile turns on a question of intent and not status. The opinion continues:

> The fact that these people have been required to comply with Title 49 and 53 of the Trust Territory Code [Labor and Immigration] will not defeat their claim to local domicile in and of itself.

Opinion at p.2.

---

[11]/Appendix D to Plaintiff's Motion for Summary Judgment (filed Feb. 20, 1980).

Castro, then, in rejecting the plaintiffs' application for Certificates of Identity based upon their status as alien workers, acted contrary to a decision of the High Court and in defiance of the advice of two government attorneys.[12/] Such action is clearly indicative of bad faith and ill will and rises beyond mere unlawful activity to the level of unconstitutional conduct. There is ample evidence to show that Castro acted arbitrarily and capriciously and violated the substantive norms of due process.

The unconstitutional actions of Castro are also the unconstitutional actions of the Commonwealth. Where the "execution of a government's policy... by those whose edicts or acts may fairly be said to represent official policy... inflicts the injury," the government is liable under § 1983 for the resulting damages. Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct.2018, 2037-2038, 56 L.Ed.2d 611 (1978). Here, an assertion that Castro was following no officially stated policy or course of conduct would not relieve the government of liability.

> Policy making does not require the adoption of a rule of general application. Monell refers to official acts as well as official policies. As one commentator has noted, "the issue is not the scope of the decision but the scope of the decision maker's mandate. If a mayor decides, in a

---

[12/] Furthermore, Castro admits that he did not consult any other attorney before he acted. See Answers to Plaintiffs' First Set of Interrogatories, ¶10 (filed Apr. 21, 1981).

444

particular case, to direct that a house be broken into unlawfully, that is official policy." Schnapper, "Civil Rights Litigation After Monell," 79 Col.L.Rev. 213, 222 (1979).

Altaire Builders, Inc. v. Village of Horseheads, supra, 551 F.Supp. at 1070; see also Fleming v. Department of Public Safety, supra, at 34-35 (actions of the Director of Public Safety clearly represent the official policy. of the Commonwealth). Here, too there can be no question that in exercising his authority to issue Certificates of Identity pursuant to 3 C.M.C. § 4122, Castro was acting in his official capacity on behalf of the Commonwealth.

The liability of Governor Camacho is not as readily determined. The only evidence which the plaintiffs have presented is the denial of the Certificates by Castro. There is no evidence that Governor Camacho personally authorized the rejections or otherwise failed to properly exercise his authority to prevent the unconstitutional action. Without more, there remain material facts in dispute making summary judgment against Governor Camacho inappropriate.

## 2. Equal Protection

The mandates of the equal protection clause as applied to government action are set forth in this Court's decision in Fleming:

> There exists some overlap between the protection offered by the due process clause and that provided under the equal protection clause. "Equal protection demands at a minimum that a [government] must apply its

445

laws in a rational and non-arbitrary way." Ceichon v. City of Chicago, 686 F.2d 511, 522 (7th Cir. 1982). The focus of equal protection analysis, however, is on the differential treatment afforded similar persons in like circumstances. "The guarantee of equal protection... is... a right to be free from invidious discrimination in governmental activity." Harris v. McRae, 448 U.S. 297, 372, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). "It is axiomatic that the Equal Protection Clause... guarantees like treatment to persons similarly situated." Desris v. City of Kenosha, Wisconsin, 687 F.2d 1117, 1119 (7th Cir. 1982). Put another way, "[w]hen a choice is made by the government, the obligation to afford all persons the equal protection of the laws arises." Kirchberg v. Feenstra, 609 F.2d 727 (5th Cir. 1979). Lastly, it is undisputed that "the constitutional mandate of equal protection extends to discriminatory executive or administrative conduct as well as to discriminatory legislation." Jackson v. Marine Exploration Co., Inc., 583 F.2d 1336, 1347 (5th Cir. 1978).

Fleming, supra, slip.op. at 29-30.

 In light of the facts recited in support of the finding of a due process violation, the denial of equal protection is evident. The Chief of Immigration intentionally and purposefully refused to issue the plaintiffs the Certificates based on a legal conclusion rejected by the High Court as well by Castro's legal advisors. Such flagrant disregard of prevailing legal theories by a lay person sufficiently demonstrates invidious discrimination against an identifiable class of persons and proves an unequal application of the laws.[13]/

[13]/In their Complaint, the plaintiffs allege that the actions "are done for the purpose of, and has [sic]the result of, practicing racial and ethnic discrimination against Plaintiffs

446

### III. Qualified Immunity

 The defendants seek summary judgment on the basis of qualified immunity. As a general matter, government officials are entitled to immunity from suits for damages; this defense was recognized at common law. See Harlow v. Fitzgerald, 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982). Two forms of immunity have been recognized. For legislators, judges, those engaged in adjudicative functions and select others such as the President of the United States, absolute immunity has been extended. See Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349. All others enjoy only a qualified immunity. The Supreme Court has held that state governors and state officials are protected by qualified immunity. Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The defendants here acknowledged that the immunity to which they claim entitlement is qualified.

 While absolute immunity protects absolutely, qualified immunity protects the officials "from liability for civil damages insofar as their conduct does not violate clearly established

_____

and members of Plaintiffs' class." In their moving papers, however, the plaintiffs concentrate soley on the arbitrariness and capriciousness of the action taken and do not rely on the grounds of racial or ethnic discrimination. Accordingly, in granting the motion for summary judgment, the Court does not decide whether or not the action of the individuals or of the government is invidiously discriminatory on the basis of race or ancestry.

447

statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, <u>supra</u>, 102 S.Ct. at 2738. In other words, if the official's conduct was objectively reasonable under the circumstances at the time, he or she will enjoy immunity from civil liability. The defense, quite obviously, is designed to encourage the diligent and energetic performance of official duties which are carried out in good faith. However, those actions taken in absence of good faith as determined primarily on objective factors, will not be shielded by official immunity.

<u>Harlow</u> denies the defense to any official who violated the clearly established constitutional or statutory rights of a plaintiff. The defendants here caution the Court that the United States Supreme Court has limited the statutory violation trigger somewhat in <u>Davis v. Scherer</u>, ___ U.S. ___, 104 S.Ct. 3012, ___ L.Ed.2d ___ (1984). In <u>Davis</u>, the plaintiffs, who were deprived of their due process rights, sought to strip the defendants of their official immunity because even though the constitutional rights were not clearly established at the time, the defendants' conduct also violated state procedures which were clearly established. The Supreme Court declined to adopt the plaintiffs' suggested interpretation. The Court stated that notwithstanding the language of <u>Harlow</u>, the defense becomes unavailable only when the conduct violates clearly established constitutional rights. 104 S.Ct. at 3020.

The defendants' concern here is understandable since it

448

has been found that their action violated the plaintiffs statutory rights. However, the concern is misplaced; the very facts and reasoning which supports today's decision regarding the defendants' violation of the plaintiffs' due process rights necessarily negates the immunity defense. The underlying basis of this Court's decision is that the defendants arbitrarily and capriciously refused to issue the Certificates to the plaintiffs based on a legal theory already rejected by one court and advised against by defendants' counsel. There can be no serious contention by the defendants that it was not clearly established that such egregious action as is evidenced here violates the substantive norms of the due process clause. The very bad faith nature of the action, which brings about the substantive due process violation, necessarily negates any assertion of good faith on the part of the defendants. Accordingly, the defendants are not shielded by official immunity and stand liable for the damages caused by their unconstitutional acts.

IV. Attorney's Fees

The plaintiffs also request attorney's fees pursuant to 42 U.S.C. § 1988. An award of attorney's fees is not properly an element of relief indistinguisable from other elements. The fees allowed "are not compensation for the injury giving rise to an action" and are "uniquely separable from the cause of action." White v. New Hampshire Department of Employment Security, 455 U.S. 445, 451-452, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

Accordingly, the Court reserves determination on the propriety and nature of any fee award until a judgment in this matter with respect to defendants has been entered.

## V. Conclusion

For the reasons stated herein, the Court:

1. GRANTS the plaintiffs' motion for summary judgment as against the Commonwealth and as against Francisco C. Castro; and

2. DENIES the plaintiffs' motion for summary judgment as against Carlos S. Camacho; and

3. DENIES the defendants' motion for summary judgment.

_Jan. 24, 1986_

Date

_Alfred Laureta_

JUDGE ALFRED LAURETA

450