724 F.2d 89
 Ben McGEE d/b/a The Liquor Center, Appellant,
v.
Joe HESTER, Agent-In-Charge, Western District of Tennessee;
Ed Gammon, Agent for the Tennessee Alcoholic
Beverage Commission, Appellees.
 No. 82-2326.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1983.
Decided Dec. 30, 1983.
Rehearing Denied Feb. 1, 1984.
 
 John W. Walker, P.A., John W. Walker, Little Rock, Ark., Benita Terry Jones, Dallas, Tex., for appellant.
 Henry E. Hildebrand, III, Robert W. Lough, Waddey & Newport, David M. Himmelreich, Asst. Atty. Gen., Nashville, Tenn., for appellees; William M. Leech, Jr., Atty. Gen. & Reporter, Nashville, Tenn., of counsel.
 Parrish & Mulrooney, P.C., Memphis, Tenn., for appellee Hester.
 Before HEANEY, ROSS and JOHN R. GIBSON, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This action originated in the Chancery Court of Crittenden County, Arkansas, where Ben McGee filed a complaint against appellees Joe Hester and Ed Gammon, other employees of the Tennessee Alcoholic Beverage Commission (ABC), and members of the ABC. McGee alleged that defendants had unlawfully interfered with his retail liquor business, The Liquor Center, located in West Memphis, Arkansas. The Chancery Court granted a temporary injunction on the same day the action was filed.
 
 
 2
 Shortly thereafter, defendants filed a petition for removal in the United States District Court for the Eastern District of Arkansas. On that same day, defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted and lack of jurisdiction. McGee filed an amended complaint alleging deprivation of property without due process under 42 U.S.C. Sec. 1983, conspiracy to deprive him of his civil rights under 42 U.S.C. Sec. 1985, and a pendent state law claim for intentional interference with his business. McGee also requested permanent injunctive relief.
 
 
 3
 Upon the completion of discovery, defendants moved for summary judgment. McGee filed a motion for summary judgment on the issue of injunctive relief. The district court granted defendants' motions for summary judgment, dismissing the complaint with prejudice. McGee appeals only from that portion of the district court's order which granted summary judgment to defendants Hester and Gammon.
 
 
 4
 As this case was dismissed on motions for summary judgment, we will set out the facts in the light most favorable to McGee. McGee, a black man and Arkansas resident, owns and operates a retail establishment dealing in packaged liquor located in the city of West Memphis, Arkansas. West Memphis is approximately seven to ten miles from Tennessee. McGee contends that during a four month period in 1979, his business became the target of unlawful and unjustifiable surveillance which interfered with and obstructed his ability and right to earn a living. The surveillance was undertaken by the ABC to crack down on the amount of liquor being illegally imported into the state of Tennessee. The methods and practices employed in conducting the surveillance consisted of: parking five to ten feet from McGee's front door for long periods of time; taking pictures of customers; conspicuously writing down customers' license plate numbers; following customers leaving the liquor store; parking extremely close to McGee's business when no parking stalls were available; and coming into the store and following customers out as they left. McGee alleges that such intrusive tactics cast a chilling effect over the goodwill of his business thereby discouraging customers from patronizing his store.
 
 
 5
 McGee maintains that such surveillance, taken objectively, was conducted in a manner inconsistent with its purported purpose. Furthermore, McGee contends that Hester articulated a motive and intent which was inconsistent with and impermissible to the lawful pursuit of his official duties. Put more simply, McGee states that Hester told him that he would "put him out of business." Moreover, McGee contends that Gammon intentionally made his presence known to all customers to discourage them from purchasing liquor from McGee.
 
 
 6
 The standards to be applied in ruling upon a motion for summary judgment pursuant to FED.R.CIV.P. 56(c) have been clearly stated by the United States Supreme Court:
 
 
 7
 Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that * * * there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.Rules Civ.Proc.
 
 
 8
 Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). To obtain a summary judgment, the movant must demonstrate the absence of any genuine issue of material fact, and the evidence submitted to the court "must be viewed in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant must show "his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." Ozark Milling Co. v. Allied Mills, Inc., 480 F.2d 1014, 1015 (8th Cir.1973). In determining whether a genuine issue of material fact exists, the court must give the nonmoving party the benefit of all reasonable factual inferences. Adickes v. S.H. Kress & Co., supra, 398 U.S. at 158-59, 90 S.Ct. at 1608-09. Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles. Pfizer, Inc. v. International Rectifier Corp., 538 F.2d 180, 185 (8th Cir.1976), cert. denied, 429 U.S. 1040, 97 S.Ct. 738, 50 L.Ed.2d 751 (1977).
 
 
 9
 On appeal, McGee argues that the court erred in granting summary judgment because: 1) the appellees could not avail themselves of the good faith immunity doctrine when they exceeded their lawful authority and violated his constitutional rights; and 2) under the facts alleged, the pendent tort claim would lie under Arkansas law. We agree. We feel that the district court improperly granted summary judgment as a genuine issue of material fact exists.
 
 
 10
 The district court disposed of the section 1983 claim against Hester and Gammon by employing the doctrine of good faith immunity. The good faith immunity of public officials has recently been clarified in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Originally, this defense consisted of both an objective and subjective component. Wood v. Strickland, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). However, in Harlow, the Supreme Court modified the test to include only an objective component. The Court held that this was necessary to protect government officials from excessive disruption and permit "the resolution of many unsubstantial claims on summary judgment." Harlow, supra, 457 U.S. at 818, 102 S.Ct. at 2738. Under the Harlow test, officials are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.; see also Wentz v. Klecker, 721 F.2d 244 (8th Cir.1983); Green v. White, 693 F.2d 45, 47 (8th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2464, 77 L.Ed.2d 1341 (1983).
 
 
 11
 Based upon the above principles, the district court determined that appellees could not have known that McGee's constitutional rights would be violated. We cannot agree. When the facts are viewed in the light most favorable to McGee, we do not feel that this is the "insubstantial claim" contemplated by Harlow to be disposed of on summary judgment. We feel that the district court erred in focusing solely on the purpose of the surveillance. At some point, the methods of surveillance become so intrusive as to violate the clearly established property right of McGee of which a reasonable person would have known. Thus, the objective test of Harlow has been met in this case. On remand, the jury should be instructed to determine whether the appellees engaged in conduct that discouraged customers from purchasing liquor at McGee's store and whether the appellees intended such a result to flow from their actions. In short, we feel that the appellees' conduct must be intentional and substantial if McGee is to succeed on the merits. In Berbiglia v. Cheney, 249 F.Supp. 258, 266 (W.D.Mo.1965), a case which also dealt with out-of-state surveillance by liquor agents, the court specifically stated that liability could not be found where there was no contact with customers, nor was there any attempt to deter them from making purchases. That situation is quite different than the surveillance methods and motivation alleged by McGee.
 
 
 12
 The trial court, on remand, should keep in mind that McGee was violating no Tennessee law. The violations alleged were committed by the customers after leaving McGee's place of business.
 
 
 13
 McGee also contends that the district court erred in disposing of the pendent state claim. The standards for the tort of wrongful interference with business relations are discussed at length in Mason v. Funderburk, 247 Ark. 521, 446 S.W.2d 543, 547 (1969). In Mason, the following are shown to be the necessary elements of the tort: 1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted. In addition, the court strongly suggested that malice, that is, the absence of legal or social justification, was a necessary element. It is also interesting that in Mason, the court refused to dismiss the case on a summary judgment motion because it could not be said as a matter of law that the defendants were "engaged in the exercise of any lawful right." Id. 446 S.W.2d at 551.
 
 
 14
 This tort was further defined in Walt Bennett Ford v. Pulaski City Special School District, 274 Ark. 208, 624 S.W.2d 426 (Ark.1981). In Bennett, the court held that the defendant cannot be found liable if it is shown that the interference was privileged. The Bennett court defined privilege as "an impersonal or disinterested motive of a laudable character * * *." Id. 624 S.W.2d at 430.
 
 
 15
 The district court relied on the holding in Bennett, and held that the evidence in this case supported a finding that the actions were taken for law enforcement purposes in the public interest; the laws of Tennessee and the loss of revenue to its citizens. Once again we find that the focus of the district court was misplaced. Assuming that McGee's presentation of the facts is true, it cannot be said, as a matter of law, that the appellees acted with an impersonal or disinterested motive of a laudable character. According to McGee, the appellees' motive was quite personal and unlawful as they indicated to him that they wished to put him out of business. Therefore, we find that McGee also has a right to have the jury determine his pendent state tort claim.
 
 
 16
 The district court denied injunctive relief in this case because it was unconvinced that the harm complained of was present and ongoing. We agree. It appears that this issue is moot as all surveillance has ceased due to the fact that there is no longer a price differential between the two states and thus, no illegal importation into Tennessee.
 
 
 17
 For the foregoing reasons, the judgment of the district court is reversed and remanded for proceedings consistent with this opinion.
 
 
 18
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 19
 I respectfully dissent from the court's opinion in this case. I would affirm on the basis of the district court's carefully reasoned opinion.
 
 
 20
 The district court concluded that the activity of defendants and its motivating factor was the purpose of enforcing the revenue laws of the state of Tennessee. The district court in my opinion properly concluded that Hester and Gammon could not and should not have known that plaintiff's constitutional rights would be violated.
 
 
 21
 I further believe that the court opens too wide a door when it requires that the jury be instructed to determine whether Gammon and Hester engaged in conduct that discouraged customers from purchasing liquor at McGee's store and whether they intended such a result to flow from their actions. The enforcement of Tennessee law could properly have had this result.