John RODRIGUES d/b/a Tony's
Nurseries, Plaintiff,

v.

The VILLAGE OF LARCHMONT, NEW YORK, Martin S. Quigley, Richard M. McCarthy, Margaret Piccone, Miriam Curnin, Mark Scheffler, Frederick Kellogg, Jr., Lewell Rosenthal, Joseph P. Bohan, Jr., Alan W. Katzenstein, Edward T. Burns, Jane Braus, and Lawrence Lowy, Defendants.

No. 83 Civ. 7370 (DNE).

United States District Court,
S.D. New York.

May 7, 1985.

Lecci, Wolin & Wolin, Hicksville, N.Y. (Alan E. Wolin, Hicksville, N.Y., of counsel), for plaintiff.

SHEA & GOULD, New York City (Richard L. Spinogatti & Jonathan J. Bart, New York City, of counsel), for defendants.

## OPINION AND ORDER

### EDELSTEIN, District Judge:

Plaintiff, John Rodrigues ("Rodrigues"), brought this civil action against the Village of Larchmont (the "Village") and a number of Village officials.[1] The poorly drafted complaint[2] alleges a number of constitutional deprivations including a violation of "plaintiff's constitutional and common law right to due process of law and equal protection of the law," a violation of plaintiff's fifth and fourteenth amendment rights to due process of law and equal protection, a conspiracy to deny him the rights guaranteed to him under the Constitution and laws of the United States, and a violation of the privileges and immunities clause of the United States Constitution.

Defendants moved for summary judgment contending that plaintiff had failed to state a claim for relief under 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3) and that defenses were applicable should the court find a claim to be present. Plaintiff has specifically abandoned any claim asserted under Sections 1981 and 1982. Plaintiff failed to respond to defendants' contentions regarding the Section 1985(3) claim and these allegations shall also be considered to have been abandoned. Thus, only the claim under Section 1983 remains.

## BACKGROUND

Rodrigues is a caucasian male of Portuguese ancestry who owns and operates Tony's Nurseries ("Tony's"), a tree and plant nursery in Larchmont, New York. Plaintiff's Section 1983 claim centers around the treatment of his business by the Village and its officials over a twenty year period. These claims will be set forth in the footnote[3] and referred to by number

---

1. The individual defendants and their positions are as follows:

   Martin S. Quigley who was the Mayor of the Village from April, 1980 through April, 1984. He was also a member of the Board of Trustees from April, 1977 to April, 1979.

   Richard H. McCarthy, Margaret J. Piccone, Miriam Curnin and Mark Scheffler were members of the Board of Trustees of the Village at various times between April, 1979 and April, 1984. Miriam Curnin has been the Mayor of the Village since April, 1984.

   Lawrence Lowy, Joseph P. Boham, Jr., Allan W. Katzenstein, Edward T. Burns and Jane Braus are or were members of the Zoning Board of Appeals for the Village. Lewell Rosenthal is the former Chairman of the Zoning Board of Appeals.

   Fredrick Kellogg is the Village Engineer and Building Inspector and the Superintendent of the Larchmont-Mamaroneck Joint Garbage Disposal Commission.

2. The papers submitted by the plaintiff are poorly drafted and incomprehensible. The court has attempted to decipher the plaintiff's submissions and has given the plaintiff the benefit of the doubt whenever possible to determine whether a claim has been stated.

3. These claims are gleaned from the plaintiff's pleadings and motion papers, which are convoluted at best, and plaintiff's deposition.

Plaintiff alleges:

1) defendant Frederick Kellogg ("Kellogg"), the Village Engineer, has refused to honor plaintiff's bids after they were accepted;

2) Kellogg intentionally mixed glass into plaintiff's top soil;

3) the Village denied plaintiff a sign variance which had been awarded to all other establishments which had requested it;

4) the Village Board denied plaintiff's application for a shade structure;

5) the Zoning Board of Appeals denied plaintiff's application for a set back variance after refusing to receive relevant evidence, disallowing presentations, taking aggressive anti-plaintiff positions, encouraging opposition and generally acting arbitrary and capricious;

6) the Village Police Department refused to investigate crimes occurring against plaintiff or to permit plaintiff to file complaints with respect to criminal occurrences;

7) defendants Martin S. Quigley ("Quigley"), the mayor of the Village from April 1980 through April 1984 and a member of the Village Board of Trustees from April 1977 to April 1979, and Richard H. McCarthy ("McCarthy"), a member of the Village Board of Trustees between 1980 and 1984, refused to correct the alleged police inaction;

8) defendant Mark Scheffler, a member of the Village Board of Trustees between 1978

throughout this opinion to facilitate the analysis of defendants' motion.

## DISCUSSION

Defendants contend that plaintiff has failed to state a claim under Section 1983, that defendants are immune from liability for the acts alleged by plaintiff, that relief for a number of plaintiff's allegations is barred by the statute of limitations, and that the Village is not liable for punitive damages.

A two step analysis will be used to resolve this motion. The first step is to determine whether the facts set forth by plaintiff state a claim under Section 1983; and the second step is to determine wheth-er any of these claims are subject to the defenses asserted by defendants.

## I. STANDARD APPLIED TO A MOTION FOR SUMMARY JUDGMENT.

■ Summary judgment may be granted only where there are no genuine issues of material fact. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). All evidence submitted to the court must be viewed in the light most favorable to the plaintiff. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).[4] The standard is strictly construed in this circuit. *United States*

and 1982, advocated a boycott of plaintiff's business;

9) defendant Kellogg placed restraints on the trash collection at plaintiff's business and refused to permit plaintiff to use the Village dump;

10) defendant Quigley refused to act on these restraints following a complaint made by the plaintiff;

11) defendant Kellogg, with the approval of the Mayor and Trustees, has refused to do any other business with the plaintiff;

12) defendant Lewell Rosenthal ("Rosenthal"), the chairman of the Zoning Board of Appeals during 1982, refused to permit speakers to testify on behalf of plaintiff at Zoning Board Meetings;

13) defendant Lawrence Lowy ("Lowy"), a member of the Zoning Board of Appeals from 1982 to the present and a member of the Village Board of Trustees from 1974 through 1976, in his capacity as Trustee ordered the plaintiff to cease operation of an intercom which thereafter was sabotaged;

14) the Village, through its Trustees, have attempted to enact ordinances aimed solely at plaintiff;

15) defendant Lowy has encouraged local newspapers to write derogatory articles about plaintiff;

16) defendant Lowy has urged the Board of Trustees to take action against the plaintiff;

17) defendant Allan W. Katzenstein ("Katzenstein"), a member of the Zoning Board of Appeals from 1973 to the present, has urged that conditions at plaintiff's premises be intentionally made subject to zoning ordinances;

18) defendant Quigley has encouraged Village residents to complain about the plaintiff;

19) the Village has enacted special provisions when dealing with plaintiff;

20) defendant Kellogg has engaged in surveillances of plaintiff;

21) the Village has joined in citizen complaints to State agencies about the plaintiff;

22) there have been a number of official complaints lodged against the plaintiff;

23) defendants and their agents have conducted a vendetta against plaintiff in order to destroy his business and to cause him severe emotional and mental distress. The harassment of plaintiff as a part of this vendetta has included causing approximately one hundred official complaints to be lodged against plaintiff's business most of which have been investigated and found to be without merit and the above noted restraints on trash pick-ups, assaults on plaintiff's employees, ethnic slurs, Zoning Board prejudice, threatening phone calls, and the bringing of numerous State Supreme Court actions against the plaintiff alleging zoning violations.

4. Plaintiff presents an inaccurate discussion of the standard to be applied to a motion for summary judgment. Plaintiff would have the court rely on the pleadings to determine if summary judgment should be granted. This is clearly incorrect. Rule 56 of the Federal Rules of Civil Procedure provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The cases relied on by plaintiff to support his interpretation involve motions to dismiss pursuant to Rule 12 and are therefore inapplicable to the present motion.

v. United Scenic Artists Local 829 of the Brotherhood of Painters, Decorators & Paperhangers of America, 27 F.R.D. 499, 501 (S.D.N.Y.1961). The court finds that partial summary judgment is appropriate because accepting the plaintiff's statements of fact as true, defendants are entitled to judgment as a matter of law on all but one of plaintiff's claims.

## II. THE CLAIMS.

■ Plaintiff makes a number of allegations regarding the conduct of the Village and its officials. In order to succeed on a Section 1983 claim, "plaintiffs must prove both 1) deprivation of a federal constitutional or legal right ... which 2) resulted from 'the sort of abuse of government power that is necessary to raise an ordinary tort by a government agent to the stature of a violation of the Constitution.'" *Williams v. Kelly*, 624 F.2d 695, 697 (5th Cir. 1980), *cert. denied*, 451 U.S. 1019, 101 S.Ct. 3009, 69 L.Ed.2d 391 (1981) (quoting *Turpin v. Mailet*, 579 F.2d 152, 169 (2d Cir.) (en banc) (Oakes, J., concurring), *cert. denied*, 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978)).

## A. OBVIOUS STATE LAW ACTIONS

■ Plaintiff claims that defendants have refused to honor bids (claim 1); have mixed glass into top soil (claim 2); have advocated a boycott of plaintiff's business (claim 8); have refused to do any other business with plaintiff (claim 11). The mere fact that a legally cognizable injury is inflicted by a state official acting under color of state law does not establish a constitutional violation so as to authorize a claim under Section 1983. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). These claims are clearly state law claims in tort and contract and do not rise to the level of a constitutional deprivation actionable under Section 1983.

## B. POLICE PROTECTION

■ Plaintiff claims that the Village Police Department refused to investigate crimes against the plaintiff and did not permit him to file a complaint and that various individual defendants failed to correct this police inaction and to provide protection for the nursery. (Claims 6 and 7). Plaintiff contends that this inaction constitutes a due process violation. There is certainly no constitutional right to be protected from criminal activity. *Wright v. City of Ozark*, 715 F.2d 1513, 1516 (11th Cir.1983); *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982); *Reiff v. City of Philadelphia*, 471 F.Supp. 1262, 1265 (E.D.Pa. 1979). Therefore, the claim based on the individual defendants' inaction is not actionable under Section 1983. The claim that plaintiff was not permitted to file complaints in criminal actions is also defective. Plaintiff admits that while police officers were reluctant to press charges in two robberies of the nursery, charges were eventually brought in both cases. Deposition of John Rodrigues at 204–17. Thus, plaintiff's claim is not supported by his own version of the facts.

## C. TRASH COLLECTION AND USE OF VILLAGE DUMP

■ Plaintiff alleges that defendants restrained trash pick-ups at the nursery on two occasions, Rodrigues Deposition at 228–29, and denied him access to the Village dump. (Claim 9). Rodrigues further claims that defendant Quigley refused to act on these restraints following plaintiff's complaint. (Claim 10). A restraint on the provision of municipal services may establish a Section 1983 cause of action based on denial of equal protection, *e.g., Johnson v. City of Arcadia, Fla.*, 450 F.Supp. 1363, 1378–79 (M.D.Fla.1978) (Section 1983 action based on discriminatory provision of services based on race); *see Beal v. Lindsay*, 468 F.2d 287, 288 (2d Cir.1972) (equal protection claim based on discrimination in level of service provided).[5] Rodrigues claims that

5. A Section 1983 cause of action involving municipal services is also available for the deprivation of property without due process, *e.g., Kos-* *tiuk v. Town of Riverhead*, 570 F.Supp. 603, 609 (E.D.N.Y.1983) (de minimis deprivation of property when plaintiff's dog was impounded over-

the services were not provided and that he feels that he "had been discriminated against." Rodrigues Deposition at 229. To prevail on this claim, Rodrigues must establish not only that he was discriminated against, but also, because he is not a member of a suspect class, that the alleged discrimination was purposeful or intentional. *Teleprompter of Erie, Inc. v. City of Erie,* 567 F.Supp. 1277, 1293 (W.D.Pa. 1983); *see Burt v. City of New York,* 156 F.2d 791, 792 (2d Cir.1946) [6] Therefore, plaintiff does state a claim with regard to the restraints on trash pick-up and access to the dump. Plaintiff claims that the restraint on trash pick-up was based on a personal hostility toward the plaintiff, a situation which has been sufficiently articulated to withstand a motion for summary judgment. This is precisely the situation noted by Judge Learned Hand in *Burt.* 156 F.2d at 791.

### D. THREATS REGARDING NURSERY INTERCOM

█ Plaintiff also claims that defendant Lowy came to the nursery and told the plaintiff to shut off the intercom and that if plaintiff did not shut them off, Lowy would have the police come to shut them off. The intercom was later sabotaged. (Claim 13). The actions attributed to Mr. Lowy are merely statements of future intent. As Rodrigues concedes, the Village received "numerous complaints against the intercom," Rodrigues Deposition at 275, so that the Village was simply responding to these complaints when it took action against plaintiff. Further, Rodrigues admits that the "sabotage" of the intercom was not done by any of the defendants, but was done by a private citizen. Rodrigues Deposition at 277. This clearly cannot be the basis for a civil rights action.

night). The plaintiff makes no claim in this regard.

6. Defendants contend that plaintiff has abandoned his equal protection claims by expressly dropping the claims under Sections 1981 and 1982 and impliedly abandoning the claim under

### E. ENACTMENT OF VILLAGE ORDINANCES AIMED AT THE NURSERY

█ Rodrigues contends that the Village Trustees (Claim 14) and the Zoning Board (Claim 17) have attempted to enact ordinances aimed solely at plaintiff and that the Village enacted special provisions when dealing with the nursery (Claim 19). Plaintiff cannot, however, rely on conclusory allegations to survive a motion for summary judgment. *See Taylor v. Mayone,* 574 F.Supp. 609, 612 (S.D.N.Y.1983); *Saratoga Vichy Spring Co. v. Lehman,* 491 F.Supp. 141, 151 (N.D.N.Y.1979), *aff'd,* 625 F.2d 1037 (2d Cir.1980). With respect to the Trustees, plaintiff has not pointed to a single ordinance, proposed or enacted that supports this claim. Defendants have sworn that no such ordinances have been considered or enacted. McCarthy Affidavit ¶¶ 7–8; Scheffler Affidavit ¶¶ 5, 7; Curnin Affidavit ¶ 4; Quigley Affidavit ¶ 4. Plaintiff has not satisfied his burden with respect to this claim. With respect to the Zoning Board, plaintiff refers to an ordinance prohibiting the use of sound equipment at the nursery. Deposition at 278. Rodrigues stated that he did not know whether the ordinance was passed but that "it was found to be unconstitutional." Deposition at 278. The ordinance discussed by plaintiff may not have become law and given plaintiff's statements did not infringe on his constitutional rights.

### F. SURVEILLANCE OF THE NURSERY

█ Plaintiff claims that "[d]efendant Kellogg has engaged in surveillances of plaintiff." Plaintiff's Rule 3(g) Statement ¶ 24. (Claim 20). Plaintiff has included an affidavit by Kellogg and a supporting document that were submitted in a state court action brought by the Village against Rodrigues. Exhibit 28 noted in Plaintiff's Memorandum in Opposition.

Section 1985. While the plaintiff has abandoned equal protection claims relating to race based discrimination, equal protection claims may still be stated when the actions involve intentional or purposeful discrimination against non-suspect classes. See cases cited in text.

Unlawful and unjustifiable surveillance that interferes with and obstructs a person's ability and right to earn a living may establish a claim under Section 1983. *See McGee v. Hester,* 724 F.2d 89 (8th Cir.1983). In *McGee,* the surveillance harassed customers and may have cast a chilling effect over the goodwill of the business. There is no claim that the surveillance undertaken by Kellogg in any way intruded on plaintiff's right to earn a living or that it was unjustifiable or illegal. In fact, the very documents which plaintiff has offered to support the fact of the surveillance demonstrates that the surveillance was conducted to insure compliance with a restraining order issued by the Supreme Court. Under these circumstances, the surveillance does not establish a cause of action under Section 1983.

### G. FILING AND INVESTIGATION OF COMPLAINTS AGAINST THE NURSERY

▮ Plaintiff also contends the Village directed a number of complaints and violation notices against the plaintiff (Claim 22), that defendants have encouraged Village residents to complain about the nursery (Claim 18) and that the Village has joined in citizen complaints to state agencies about the plaintiff (Claim 21). With respect to plaintiff's contention regarding defendants encouraging Village residents to file complaints against the plaintiff, plaintiff has not come forward with any evidence of such action by a defendant. All of the complaints were made by private citizens and plaintiff has failed to set forth any facts which would establish a connec-

tion between the actions of the private citizens and defendants. Thus, the filing of the complaints by the private citizens cannot be said to be under color of state law and is not cognizable under Section 1983.[7]

▮ Plaintiff's contentions regarding the filing of complaints by defendants and joining in citizen complaints present a different situation.[8] These allegations are analogous to a claim of malicious prosecution against the Village. Malicious prosecution, generally does not constitute a deprivation of life, liberty or property without due process of law, and therefore, is not cognizable under 42 U.S.C. § 1983. *Cline v. Brusett,* 661 F.2d 108, 112 (9th Cir.1981); *see Norton v. Liddel,* 620 F.2d 1375, 1378 (10th Cir.1980). An exception to the rule exists if the alleged malicious prosecutions are so egregious as to subject plaintiff to a deprivation of constitutional dimension. *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir.1982), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983); *Norton, supra,* 620 F.2d at 1378. The complaints in this case merely initiated investigations by the state agencies and did not implicate any constitutional rights or liberties. *Compare Cline, supra,* 661 F.2d at 112 (prosecution impaired liberty interest); *and Dunn, supra,* 697 F.2d at 125–26 (implicated right to be free of unreasonable search and seizures). Further, the actions of the defendants were certainly not so egregious as to rise to the level of a civil rights violation. Plaintiffs claims can be adequately addressed in a state court tort action. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

---

**7.** If the plaintiff is claiming that the investigation of these citizen complaints constitutes an infringement of his civil rights, this claim would likewise fail. An analogous situation would be an action based on the selective enforcement of a regulation. In order to succeed on such a claim, the plaintiff must establish: 1) that the person, compared with others similarly situated, was selectively treated; and 2) that such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LeClair v. Saunders,* 627 F.2d 606,

609–10 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). The plaintiff has not come forward with any evidence that he was selectively treated or that, if there was selective treatment, that it was based on impermissible considerations.

**8.** The complaints involved were apparently notices to various state agencies regarding alleged violations by the plaintiff of environmental and health regulations. See Plaintiff's Response to Interrogatory No. 15.

## H. ZONING VARIANCES

### 1. The Denial of the Variance

Plaintiff claims that the Village denied him a sign variance which had been granted to all others who requested it (claim 3) and that the Village Board of Zoning Appeals denied plaintiff's application for a shade structure (claim 4). Plaintiff apparently contends that these actions were intended to drive him out of business and therefore constitute a due process violation. Plaintiff's Memorandum in Opposition at 17–18 (relying on *DiMaggio v. O'Brien*, 497 F.Supp. 870 (E.D.Pa.1980)). The circumstances of *DiMaggio* are quite different from those presented here. The plaintiff in that case was arrested for criminal violations of the zoning laws and the Section 1983 action was based on malicious use and abuse of process. The court found that the abuse of process was a constitutional tort because it is "by definition a denial of procedural due process." *DiMaggio, supra*, 497 F.Supp. at 878. Plaintiff in this action has not alleged any such abuse of process.

■■■ If on the other hand, plaintiff is alleging a violation of equal protection, this states a claim under Section 1983. Plaintiff alleges that he was denied a variance that all others who applied for had received. Under the doctrine of *Burt v. City of New York*, 156 F.2d 791 (2d Cir.1946), an equal protection claim may be raised even though the plaintiff is not a member of a suspect class. It must be noted, however, that plaintiff will have to bring forth substantial facts at trial supporting his allegations of discriminatory treatment. *Marty's Adult World of New Britain, Inc. v. Guida*, 453 F.Supp. 810, 818 (D.Conn.1978).

9. Review of Zoning Board decisions in federal court is limited to an examination of whether the action of the municipality invades the constitutional rights of the complaining party. *See Sternaman v. County of McHenry*, 454 F.Supp. 240, 242–43 (N.D.Ill.1978). The equal protection claim falls into this category. The court cannot substitute its discretion for that of the

### 2. Procedural Due Process during Zoning Hearings

■■■ Plaintiff contends that the Zoning Board of Appeals refused to receive evidence regarding plaintiff's application (Claim 5) and that a defendant refused to permit speakers to testify on behalf of the plaintiff before the Zoning Board of Appeals (Claim 12). Both of these claims apparently relate to plaintiff's application for a set back variance. Plaintiff suggests that these limitations resulted in a denial of procedural due process. Due process claims are subjected to a two-step analysis: first, the court must ascertain whether that which the plaintiff claims he was deprived of amounts to a property interest entitled to due process protection, and second, the court must determine the nature of the process due. *Beacon Syracuse Assoc. v. City of Syracuse*, 560 F.Supp. 188, 194 (N.D.N.Y.1983). In this case, the claim fails the first part of the analysis, because "under New York law, no right to a nonconforming use is gained when a landowner applies for a permit," *Ellentuck v. Klein*, 570 F.2d 414, 429 (2d Cir.1978).[9]

## III. DEFENSES.

Plaintiff has alleged facts to support two claims under Section 1983: first, the denial of equal protection by defendant Kellogg in the refusal to pick up trash and permitting plaintiff to use the Village dump; and second the denial of equal protection in the denial of a zoning variance. Defendants have interposed a number of defenses to the plaintiff's claims which may preclude liability.

### A. IMMUNITY

### 1. Equal Protection Claim for the Denial of Variances

■■■ Defendants have asserted that the members of the Village Board of Zoning

Zoning Board. While there is no federal claim for the procedural defects alleged, the decision of the Zoning Board may be reviewed through an Article 78 proceeding. The plaintiff has followed this procedure and has been denied relief by the Supreme Court of the State of New York. The decision of the Supreme Court is presently on appeal to the Appellate Division.

Appeals are protected by judicial immunity. To refute this argument, the plaintiff relies on *Altaire Builders, Inc. v. Village of Horseheads*, 551 F.Supp. 1066 (W.D.N.Y. 1982) where the court found that the Village Board of Trustees who reviewed decisions of the zoning board were not performing a legislative function and were not protected by judicial or legislative immunity. The Trustees were deemed to be performing an administrative function and were entitled to only a qualified immunity. 551 F.Supp. at 1074–75. Plaintiff asserts that the Board of Zoning Appeals is similar to the Board of Trustees in *Altaire Builders*. The court agrees with this comparison and the analysis of the court in *Altaire Builders*.

■■■■ Under this analysis, the Village would also be liable for the actions of the Village Board of Zoning Appeals. The decisions of the Board are intended to be binding on the Village. Thus, the Board members are those officers described by *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) whose joint edicts or acts may fairly be said to represent official policy. *Altaire Builders, supra,* 551 F.Supp. at 1070. For purposes of Section 1983 liability, the Board of Zoning Appeals and the Village are one and the same. *Id.*[10]

■■■■ The question then becomes whether the Board's actions as alleged by plaintiff are protected by their qualified immunity. Plaintiff asserts that summary judgment is inappropriate on the issue of qualified immunity. This is incorrect. In light of the Supreme Court decision in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), which removed the subjective element of the defense, summary judgment may be used to resolve the issue of qualified immunity. *Pullnow v. Glennon*, 757 F.2d 496, 500 (2d Cir.1985). Thus, summary judgment is appropriate where the conduct itself and the surrounding circumstances are not in question. *Id.* In this

case, the circumstances surrounding the denial of the variance, including the relationship between the Village and the plaintiff are in issue. Therefore, the court cannot grant summary judgment regarding the qualified immunity.

2. Equal Protection Claim for Restraint on Trash Disposal

■■■■ The claim regarding the restraint on trash collection and use of the dump by defendant Kellogg cannot be placed into any recognized category of immunity. The claims against Kellogg may not be dismissed based on immunity. The Village, however, cannot be held liable for these claims against Kellogg. In order for the Village to be liable, the deprivation of constitutional rights must be caused by an official act, policy or custom of the municipality. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is clear that the refusal to collect trash and to use the dump attributed to Kellogg was not the policy of the Village. Official policy cannot ordinarily be inferred from a single incident. *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981). Municipal liability may also be found where the alleged unconstitutional acts "have been committed by an official high enough in the government so that his or her acts can be said to represent a governmental decision." *Losch v. Borough of Parkesburg*, 566 F.Supp. 282, 285 (E.D.Pa.1983). Kellogg was a man with many hats in Larchmont—Village Engineer, Building Inspector, and Superintendent of the Larchmont-Mamaroneck Joint Garbage Disposal Commission—but certainly he cannot be considered to be an official high enough so that his actions represent a governmental decision.

B. STATUTE OF LIMITATIONS

■■■■ The appropriate statute of limitations in a Section 1983 action is the stat-

---

**10.** Punitive damages are not available against the Village. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

ute of limitations for the recovery of damages for personal injuries. *Wilson v. Garcia,* — U.S. —, —, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). The personal injury statute of limitations in New York is three years. N.Y.Civ.Prac. Law § 214 (McKinney Supp.1984–85). This action was filed on October 4, 1983, so that any claims accruing prior to October 4, 1980 are time barred.[11]

The incident regarding the restraints on trash collection and use of the dump occurred shortly after plaintiff received a letter from defendant Kellogg dated July 18, 1980. Plaintiff's Response to Interrogatory No. 25. Plaintiff claims that the restraints continued for one week. Rodrigues Deposition at 232. The incident therefore occurred prior to October 4, 1980 and is therefore time barred.

The denial of the zoning variances also implicate the statute of limitations. Plaintiff asserts that he was denied a variance on two occasions: the first was prior to 1975, Rodrigues Deposition at 142, and the second in 1982, *id.* at 141. Any cause of action relating the denial of the first variance application is time barred. Thus, the only basis for this action is the 1982 denial of the zoning variance.

## CONCLUSION

Defendant's motion for summary judgment is granted in part and denied in part. The action against the Village and the members of the Village Board of Zoning Appeals regarding the denial of the 1982 variance application may proceed. All other causes of action are dismissed.

SO ORDERED

---

11. Plaintiff argues that acts occurring prior to October 4, 1980 are not time barred, based on two theories: a "continuing conspiracy" theory and a "diligence discovery" rule. Both of these theories were presented to the court in *Singleton v. City of New York,* 632 F.2d 185 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981), and rejected. As stated by the Court of Appeals:

> Characterizing [the alleged] wrongful acts as "a single series of interlocking events" does not postpone accrual of claims based on individual wrongful acts. The crucial time for accrual purposes is when the plaintiff becomes aware that he is suffering a wrong for which damages may be recovered in a civil action.

*Id.* at 192. The other basis of plaintiff's claim was also rejected. The court noted limited instances where the action does not accrue until the wrong becomes apparent but found that the situation presented did not warrant such treatment. *Id.* at 192–93. In this case, plaintiff was aware of both the restraint on trash collection and use of the dump as well as the denial of the first two variance applications at the time that these events occurred. Further, any injury resulting from these alleged acts was apparent at the time they occurred. The three year statute of limitations measured from October 4, 1980 applies to this action.