815 F.2d 1193
 Ben McGEE, d/b/a The Liquor Center, Appellee,
v.
Joe HESTER, Agent-in-Charge, Western District of Tennessee,
Tennessee Alcoholic Beverage Commission, Appellant
(Two Cases).
Ben McGEE, d/b/a The Liquor Center, Appellant,
v.
Joe HESTER, Agent-in-Charge, Western District of Tennessee,
Tennessee Alcoholic Beverage Commission, Appellee.
 Nos. 86-1270, 86-1645 and 86-1646.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 12, 1986.
Decided April 6, 1987.
Rehearing and Rehearing En Banc Denied June 18, 1987.
 
 John J. Mulrooney, Memphis, Tenn., for appellant.
 Clint Saxton, West Memphis, Ark., for appellee.
 Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.
 BRIGHT, Senior Circuit Judge.
 
 
 1
 These appeals bring this litigation before us for a second time. The first appeal is reported at 724 F.2d 89 (8th Cir.1983).
 
 
 2
 The present controversy consists of three consolidated appeals, all arising from a suit brought by Ben McGee, owner of an Arkansas liquor store, against Joe Hester, Agent-in-Charge, and other members and employees of the Tennessee Alcoholic Beverage Commission ("ABC"). In his original complaint, McGee alleged, inter alia, that Hester and the other defendants deprived him of his property without due process and intentionally interfered with his business. In the first of the three consolidated appeals, Hester contends that the district court erred in denying his motion for a judgment notwithstanding the special verdict, or, alternatively, for a new trial.[1] In a second appeal, Hester contests, as excessive, the district court's award of attorney's fees in the amount of $53,917.50 (fees of $44,750 plus a 15% enhancement, plus costs). In the third appeal, McGee contests the district court's denial of attorney's fees for work performed on his prior appeal to this court.
 
 I. BACKGROUND
 
 3
 In 1979, ABC commenced a crackdown upon the illegal import of untaxed out-of-state liquor into the State of Tennessee. The object of the crackdown was to arrest Tennessee residents importing such liquor into the State. Ben McGee owns and operates The Liquor Center, a retail liquor store located in West Memphis, Arkansas, approximately seven to ten miles from the Tennessee border. As was his right, McGee openly solicited Tennessee customers; placing advertisements in Memphis papers that contained maps and directions to his liquor store. Apparently suspicious that Tennessee residents were purchasing liquor from The Liquor Center in order to evade the Tennessee tax, ABC, under the direction of Joe Hester, placed The Liquor Center under surveillance for four months in 1979. This litigation arose in response the methods used by Hester and the other agents to carry out their surveillance activities.
 
 
 4
 As already indicated, McGee filed a complaint alleging deprivation of property without due process of law in violation of 42 U.S.C. Sec. 1983, and a pendent state law claim for intentional interference with his business.[2] Specifically, McGee alleged that the ABC agents engaged in intrusive surveillance tactics for the purpose of forcing him to close down his business.[3]
 
 
 5
 Initially, the district court granted the defendants' motion for summary judgment. The court determined that Hester and the other agents were not liable for violating section 1983 under the doctrine of good faith immunity of public officials set forth in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The district court refused to find the agents in violation of Arkansas state law, holding that the surveillance activities were privileged as law enforcement measures in the public interest under Walt Bennett Ford, Inc. v. Pulaski County Special School District, 274 Ark. 208, 624 S.W.2d 426 (1981).
 
 
 6
 In the first appellate litigation (on McGee's appeal), a panel of this court reversed the grant of summary judgment and remanded the case to the district court. McGee v. Hester, 724 F.2d 89 (8th Cir.1983).[4] The panel held first that McGee was not alleging an "insubstantial claim" properly disposed of on summary judgment under Harlow, 457 U.S. at 818, 102 S.Ct. at 2738, and second, that even "[a]ssuming McGee's presentation of the facts is true, it cannot be said, as a matter of law," that Hester and Gammon "acted with a personal or disinterested motive of a laudable character." McGee, 724 F.2d at 92. The panel concluded that McGee had a right to have a jury determine the merits of his claims. Speaking through Judge Ross, the panel stated,
 
 
 7
 On remand, the jury should be instructed to determine whether the appellees engaged in conduct that discouraged customers from purchasing liquor at McGee's store and whether the appellees intended such a result to flow from their actions.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 [W]e find that McGee also has a right to have the jury determine his pendent state tort claim.
 
 
 11
 Id.
 
 
 12
 On remand, the district court determined that these factual issues would best be determined by submitting special interrogatories to the jury. The jury answered most of these in McGee's favor, finding the following to be true: (1) Hester told McGee that he was going to put McGee out of business; (2) Hester, in directing the ABC surveillance program, had a personal, conscious intent to harm McGee or McGee's business; (3) Hester intentionally singled out McGee and his business for surveillance activities; (4) in carrying out his surveillance activities, Hester did not believe in good faith that he was not violating McGee's constitutional rights; (5) Hester instructed his agents to employ overt and intrusive surveillance techniques to frighten away legitimate customers from McGee's business; (6) the overt manner in which ABC's surveillance activities were conducted resulting in frightening legitimate customers away from McGee's business; (7) ABC agents visited McGee's business one to three times per week from July 1, 1979, through October 10, 1979; (8) ABC agent Gammon parked his unmarked, government vehicle directly in front of McGee's store; (9) Hester personally directed or acquiesced in the particular surveillance tactics employed by the ABC agents; (10) McGee purposefully solicited Tennessee customers to purchase liquor from his store knowing that the customers' import of the liquor into Tennessee would violate Tennessee law; (11) McGee did not offer to indemnify Tennessee customers for losses suffered as a result of transporting liquor purchased at his store into Tennessee; (12) McGee sustained losses of $7,573 as a direct and proximate result of Hester's surveillance activities; (13) publicity surrounding ABC's arrests and surveillance, as well as customers' firsthand observance of those activities, deterred prospective customers from McGee's store; (14) McGee sustained damages through the loss of Arkansas, and other non-Tennessee customers, as well as from Tennessee residents who did and did not intend to return to Tennessee with the liquor.
 
 
 13
 Because the jury answered the pertinent interrogatories in McGee's favor, the district court instructed the jury on punitive damages. After deliberation, the jury returned with a verdict for $50,000 in punitive damages.
 
 
 14
 Hester then moved for a judgment notwithstanding the special verdict or, in the alternative, for a new trial. The district court denied the motion, upheld the jury's award of $50,000 in punitive damages, and directed a remittitur of all but $1,500 in actual damages awarded by the jury. McGee accepted the remittitur in lieu of a new trial limited to the issues of compensatory and punitive damages. Thereafter, Hester filed these appeals.
 
 II. DISCUSSION
 
 15
 Hester contends that the district court erred in denying his motion for a judgement notwithstanding the special verdict or, in the alternative, for a new trial, because McGee failed to make out a prima facie case for either deprivation of property or for intentional interference with his business relations. Hester argues that McGee did not prove that ABC's surveillance methods discouraged prospective customers from purchasing liquor at his store or that the agents intended such a result. Hester also contends that McGee failed to prove the existence of any damages attributable to the surveillance activities. Finally, Hester contends that the punitive damages awarded were excessive.
 
 
 16
 We are satisfied, however, that the trial court properly submitted the issues in this case to the jury, that sufficient evidence supported the jury's answers regarding liability, and that the district court did not err in denying Hester a new trial. We are satisfied also that the district court properly reduced the jury's damage award to $1,500, and entered the jury's award of $50,000 in punitive damages.
 
 A. Sufficiency of the Evidence
 
 17
 In reviewing the record, we note that McGee testified that Hester told him that he wanted to put McGee out of business and that this motivated the decision to send additional agents to observe McGee's store. McGee also offered evidence to demonstrate that his store experienced a sales decline during the surveillance period. Further, an employee of McGee's establishment testified that he observed ABC agents in McGee's parking lot on several occasions and that the on-site surveillance caused McGee to lose patronage. A customer who regularly bought liquor from McGee en route from his Tennessee to his Arkansas residence ceased patronizing McGee's store because of the media publicity surrounding ABC's arrests of McGee customers. This evidence is sufficient to support the jury's determination that ABC's surveillance methods deterred prospective customers from shopping at McGee's liquor store and that Joe Hester, the Agent-in-Charge, intended the surveillance to deter prospective customers.
 
 
 18
 No useful purpose is served by further reciting the evidence. The evidence at trial substantially tracked that previously presented to a panel of this court before it reversed the district court's grant of summary judgment of dismissal. In answer to special interrogatories, the jury resolved any disputed evidence in McGee's favor.
 
 
 19
 We determine, therefore, that the jury verdict on liability for both deprivation of property under federal law and intentional interference with a business under Arkansas law must be sustained. This court holds that the test for sufficiency of the evidence under federal and the Arkansas law are similar. Garoogian v. Medlock, 592 F.2d 997, 999 n. 3 (8th Cir.1979). Under the federal test, " 'a jury verdict will be sustained so long as there is "substantial evidence" or a "reasonable basis in fact" for the jury's conclusion.' " DeWitt v. Brown, 669 F.2d 516, 523 (8th Cir.1982) (quoting Gisriel v. Uniroyal, Inc., 517 F.2d 699, 701 n. 6 (8th Cir.1975)). See also Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 216-17, 83 L.Ed. 126 (1938). Under the Arkansas test, a " 'reviewing court is bound to examine the evidence in the light most favorable to the appellee * * * and bound to sustain the jury verdict if there is any substantial evidence to support it.' " Devitt, 669 F.2d at 523 (quoting Gargooian v. Medlock, 592 F.2d at 999). The evidence presented in this case is "substantial" under either test.
 
 
 20
 Because the evidence was adequate to support the verdict, the district court did not abuse its discretion in denying Hester's motion for a new trial. "A motion for new trial on the ground that the verdict is against the weight of the evidence is committed to the sound discretion of the trial court." SCNO Barge Lines, Inc. v. Anderson Clayton & Co., 745 F.2d 1188, 1193 (8th Cir.1984). See also Green v. American Airlines, Inc., 804 F.2d 453, 454 (8th Cir.1986). Accordingly, the jury's verdict on liability must stand.
 
 B. Compensatory Damages
 
 21
 Although the jury found that McGee sustained a loss of $7,573 as a direct and proximate result of Hester's surveillance activities, the district court directed a remittitur of all but $1,500 in actual damages. The district court discovered that in fixing this damage figure, the jury considered Hester's use of the media to publicize his proper law enforcement activities. The court had specifically instructed the jury that such a use of the media was privileged. McGee accepted the remittitur in lieu of a new trial.
 
 
 22
 From our review of the record, we are satisfied that the evidence supports the jury's determination that McGee merited an award of compensatory damages in an amount at least equivalent to the reduced amount awarded by the district court and accepted by McGee.
 
 C. Punitive Damages
 
 23
 In his complaint, McGee requested $250,000 in punitive damages for violation of his constitutional rights under section 1983 and $250,000 in punitive damages for intentional interferences with his business under state law. The jury awarded $50,000 in punitive damages, but did not attach this award to either action. We therefore review Hester's claim that the jury's punitive damage award was excessive under both federal and Arkansas law.
 
 
 24
 Again, the standards are similar. This Circuit holds that an appellate court should review a jury verdict for excessiveness only when the amount creates plain injustice or a monstrous or shocking result. Cunningham v. City of Overland, 804 F.2d 1066, 1069 (8th Cir.1986); Hollins v. Powell, 773 F.2d 191, 197 (8th Cir.1985). Similarly, under Arkansas law, a jury verdict will be upheld unless the amount is "so great as to shock the conscience of the court" or indicates "passion or prejudice on the part of the jury." Moore Ford Co. v. Smith, 270 Ark. 340, 604 S.W.2d 943, 948 (1980). See also Ray Dodge, Inc. v. Moore, 251 Ark. 1036, 479 S.W.2d 518, 524-25 (1972).
 
 
 25
 Sufficient evidence of ill-conduct existed in the present case to merit sending the issue of punitive damages to the jury. As an appellate court, our scope of review over a damage award is "extremely narrow" and we may not reverse except for a manifest abuse of discretion. American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1149 (8th Cir.1986). Although the amount may seem large, we do not believe that it shocks the conscience. See Memphis Community School District v. Stachura, --- U.S. ----, 106 S.Ct. 2537, 2542 n. 9, 91 L.Ed.2d 249 (1986). We thus uphold the jury's punitive damage award of $50,000.
 
 D. Attorney Fees
 
 26
 After careful consideration, the district court awarded McGee $44,750 in attorney's fees, plus a 15% enhancement. In Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court concluded that under 42 U.S.C. Sec. 1988, the statute authorizing district courts to award a reasonable attorney's fee to prevailing parties in civil rights litigation, a "reasonable" attorney's fee equals the "product of reasonable hours times a reasonable rate." Id. at 434, 103 S.Ct. at 1940. Hensley also stated that "in some cases of exceptional success an enhanced award may be justified." Id. at 435, 103 S.Ct. at 1940. The record in this case does not reflect "exceptional success" meriting an enhanced award. Blum v. Stenson, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548-49, 79 L.Ed.2d 891 (1984). The attorney's fees for McGee's attorney in the trial of this case will therefore be limited to $44,750, the district court's determination of a reasonable fee minus the enhancement.
 
 
 27
 The costs are also questionable. Having reviewed them, we reduce the costs to $2,400.
 
 
 28
 Finally, we turn to the issue of John W. Walker's attorney fees. Walker, the attorney who handled McGee's prior appeal to this court, is entitled to a fee for handling a prior appeal insofar as that appeal raises civil rights issues under 42 U.S.C. Sec. 1983. He is not entitled to fees for handling the pendent tort claim. We therefore direct Walker to submit to us an appropriate and verified fee bill within fifteen (15) days of the date of this opinion. Any objection to that fee should be made by Hester's counsel within ten (10) days thereafter.
 
 III. CONCLUSION
 
 29
 In summary, we affirm the judgment for liability and damages but modify the award for attorney's fees and costs. Because McGee is entitled to attorney's fees for the handling of his prior appeal to this court insofar as that appeal raised civil rights issues under 42 U.S.C. Sec. 1983, we shall give consideration to such claim when properly and timely presented.
 
 
 30
 JOHN R. GIBSON, Circuit Judge, dissenting.
 
 
 31
 I recognize that I am bound by the panel opinion in this case, McGee v. Hester, 724 F.2d 89 (8th Cir.1983), from which I also dissented, but I believe that the evidence at the second trial of this case did not satisfy the requirements set down in our earlier opinion and that the plaintiff failed to establish a submissible case.
 
 
 32
 Our earlier opinion required that the methods of surveillance be intrusive and made clear that on remand the jury should determine "whether the appellees engaged in conduct that discouraged customers from purchasing liquor at McGee's store and whether the appellees intended such a result to flow from their actions. In short, we feel that the appellees' conduct must be intentional and substantial if McGee is to succeed on the merits." McGee v. Hester, 724 F.2d at 92. We distinguished this case from an earlier district court case dealing with out-of-state surveillance, Berbiglia v. Cheney, 249 F.Supp. 258 (W.D.Mo.1965), because in Bergilia there was no contact with customers nor any attempt to deter them from making purchases. The factual basis for our earlier decision in McGee was the following catalog of methods and practices: "parking five to ten feet from McGee's front door for long periods of time; taking pictures of customers; conspicuously writing down customers' license plate numbers; following customers leaving the liquor store; parking extremely close to McGee's business when no parking stalls were available; and coming into the store and following customers out as they left." 724 F.2d at 90.
 
 
 33
 The district court was deeply troubled with the submissibility of the case and expressed doubt that there was an adequate evidentiary basis for the jury's answers to several of the interrogatories. Specifically, the court doubted the evidentiary basis for the finding that the surveillances by agents of the Tennessee ABC were in fact conducted openly and overtly, and resulted in deterring or frightening away the plaintiff's legitimate customers. It finally concluded that, in this court's earlier determination, we had before us the same factual information that was developed at trial and that, accordingly, we would be satisfied that there was a proper evidentiary basis for these interrogatories.
 
 
 34
 I first observe that the catalog of facts set out in our earlier opinion appears to be taken from the complaint. Those facts, however, were not substantiated by evidence at trial. The only evidence of an agent parking directly in front of the store involved Agent Gammon, and there was no testimony at all as to how long he was parked. Tr. at 34. The other testimony dealt with cars parked farther away from the store. McGee could not identify any Tennessee agents that took pictures of his customers. He stated only that someone once told him that there was a person outside with a camera, but when McGee rushed outside, the car sped away. Tr. at 56. One of the employees testified that he saw persons in cars with what he thought were cameras and field glasses, but he could not state whether they took any photographs. Tr. at 101-103. McGee testified that he saw an older man in a car with a note pad but he could not see what the man was writing. Tr. at 38. McGee testified specifically that Agent Gammon never talked to customers and that he never saw any agents talk to customers outside the store. The only exception was when McGee himself asked an agent, in front of a customer, if he was an agent of the Tennessee ABC. Tr. at 55. One of the employees testified that an agent came into the store and walked around but didn't speak to anyone. Tr. at 85. The same employee recalled two customers who saw the officers and said they were not going to buy any liquor. He testified that those customers had asked him about the ABC agent situation, and when he pointed out the cars with the agents, the customers said that they were not going to do business that day. Tr. at 98-99.
 
 
 35
 McGee identified two customers who saw cars on the lot: David Chaffin and Harold Shaw. Tr. at 47. Chaffin testified that he came to the store, went outside with McGee and that they noticed a car midway in the lot. Chaffin told McGee that he should try to get the cars off the lot because it was going to hurt his business. Tr. at 108. The antenna on the unmarked car was the only thing that drew his attention to it. Tr. at 110. Shaw testified to a telephone conversation in which he told McGee that McGee might lose a customer because Shaw was worried about being stopped and harassed. Tr. at 146. Also, he testified that McGee told him that the store was being watched and that the agents were taking license numbers. Tr. at 146-147.
 
 
 36
 This evidence simply falls short of supporting the jury's finding that the agents conducted surveillance openly and overtly that resulted in deterring or frightening away legitimate customers. There was no evidence that the agents contacted the customers or attempted to deter them from making purchases--facts we found important in our earlier decision. There was no evidence of the agents conspicuously writing down license plate numbers or following customers out of the store as they left. There was evidence that one customer was arrested when he returned to Tennessee after purchasing a quantity of liquor, but the evidence did not establish that the surveillance that led to the arrest was conducted openly and overtly. While there was strong evidence of Hester's intentions, which the jury evidently believed, our earlier opinion emphasized two requirements: not only must Hester's conduct be intentional, but the agent's conduct must also be intrusive. The court today chooses to avoid careful consideration of the evidence, which falls woefully short of meeting the second requirement established in our earlier opinion.
 
 
 37
 I conclude that the district court was correctly concerned that there was not substantial evidence to support the findings of the jury. The district court submitted the issue simply because he believed that our earlier decision required him to do so. I believe that the evidence failed to satisfy the requirement laid down in this court's earlier opinion that the methods of surveillance be so intrusive as to violate McGee's clearly established property right. I would reverse and remand for entry of judgment for defendants.
 
 
 
 [1]
 The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas, presiding
 
 
 [2]
 McGee, a black man, also alleged that ABC agents Hester and others unlawfully conspired to deprive him of his civil rights pursuant to 42 U.S.C. Sec. 1985. Upon a motion by the defendants, the district court dismissed this claim, finding there was no basis for a claim of racial discrimination against the ABC agents
 
 
 [3]
 McGee claimed that Hester told him that he would "put him out of business." As alleged by McGee, the surveillance practices employed by ABC agents consisted of: parking ten to fifteen feet from The Liquor Center's front door for long periods of time and parking extremely close to McGee's business when no parking stalls were available; taking pictures of customers; conspicuously writing down customers' license plate numbers; following customers leaving the liquor store; coming into the store and following customers out as they left; and using the media (publicizing ABC arrests of Tennessee residents importing untaxed out-of-state liquor into Tennessee) to deter customers from purchasing liquor from McGee
 
 
 [4]
 McGee appealed the judgment in favor of agents Hester and Ed Gammon only. Ed Gammon died during the pendency of the first appeal. Thus, the present appeal relates only to the judgment against Hester